Argued June 1, reversed and remanded for further proceedings
October 21, 1964

# STATE OF OREGON *v.* BREWTON
### 395 P. 2d 874

*Charles R. Harvey,* Portland, argued the cause and filed a brief for appellant.

*Lou L. Williams,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, and Gerald R. Pullen, Deputy District Attorney, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

McALLISTER, C. J.

This case is here on appeal for the second time. The defendant, Frank Leroy Brewton, was convicted by a jury of murder in the first degree and on April 10, 1958 was sentenced to the penitentiary for life. Defendant appealed and requested this court to appoint counsel to represent him in this court. We examined the record and decided that in this case the assistance of counsel was not necessary to present the issues on appeal. We carefully reviewed the full record of the trial, found no error, and affirmed. See, *State v. Brewton,* 220 Or 266, 344 P2d 744 (1959).

Thereafter Brewton filed a petition for a writ of habeas corpus in the United States District Court for the District of Oregon, alleging that he had been deprived of his rights under the Constitution of the United States by the refusal of this court to appoint counsel to assist him in his appeal of this case. The District Court found that Brewton had not been deprived of his constitutional rights and dismissed his petition. Brewton appealed from the order of the District Court to the United States Court of Appeals for the Ninth Circuit. In the meantime the Supreme Court of the United States had decided *Douglas et al v. California,* 372 US 353, 83 S Ct 814, 9 L ed2d 811, reh. den. 373 US 905, 83 S Ct 1288, 10 L ed2d 200 (1963),

in which the court held that the denial of counsel on appeal to an indigent defendant discriminated between the rich and the poor and violated the Fourteenth Amendment to the Constitution of the United States. In *Douglas* the California court, as we did in this case, had reviewed the record and concluded that the appointment of counsel would not be helpful either to the defendant or the court. The Court of Appeals on the authority of *Douglas et al v. California,* supra, reversed the order of the District Court dismissing Brewton's petition, and remanded the case to the District Court for further proceedings. Upon remand the United States District Court granted the State of Oregon until August 5, 1963 within which to vacate the judgment affirming Brewton's conviction, provide him with counsel, and permit him to appeal *de novo* the judgment dated April 10, 1958.

Thereafter on the 12th day of June, 1963 this court recalled the mandate issued in this case, vacated its judgment affirming appellant's conviction and granted defendant permission to appeal *de novo* from his conviction, and directed the circuit court for Multnomah county to appoint counsel to represent defendant in his appeal. Counsel was appointed and has filed a brief and orally argued the case in this court.

Defendant's brief contains only two assignments of error. The first contends that the court erred "in admitting testimony of Detectives O'Leary and Moen of an oral confession of the defendant over defendant's objection for the reason that the admissions were not voluntary and were secured from him in violation of his right to due process of law under the United States Constitution." Defendant's second assignment of error alleges that the court "erred in permitting misconduct by the prosecutor during his final argument

which prevented the defendant from having a fair trial."

There was evidence from which the jury could have found that on November 14, 1957 at about 9:15 o'clock p.m., Brewton and Eugene F. Taylor entered a grocery store at 7923 S. E. 13th Avenue in Portland, for the purpose of robbing the proprietor, one William W. McKenzie. Taylor at least was armed and there was evidence tending to prove that Brewton carried an unloaded pistol. McKenzie put up a fight and he and Taylor exchanged pistol shots and both received fatal wounds, McKenzie dying that evening and Taylor in March, 1958. Brewton also was wounded by a bullet which entered his left arm above the wrist and came out in his left palm. After the shooting Brewton and Taylor ran from the store. After running a short distance Taylor could go no further and Brewton then got Taylor's car, which had been parked in the vicinity, put Taylor in the back seat and drove to the home of Taylor's mother, which was a few blocks away. Brewton awakened Taylors' mother and told her that her son had been shot and was outside in his car. Brewton then left. Taylor's family called the police and he was taken by ambulance to a hospital.

Brewton was arrested by the police in the general vicinity of the robbery about an hour after the crime was committed. He was taken shortly after his arrest to the emergency hospital at the central police station, where his wound was treated. While at the police station Brewton was interviewed by detective Raymond J. Duerst, who testified, without objection, concerning admissions made by defendant during that interview. According to Detective Duerst, Brewton admitted that he knew Taylor, that he and Taylor had been living together in a rooming house for a few days,

and that he had last seen Taylor about 5:00 o'clock of the afternoon of that day, and that Taylor had a 1951 or 1952 Chevrolet. Duerst advised Brewton of McKenzie's death and told Brewton that he was being held on a charge of murder. The police booked Brewton in to the city jail and then took him under guard to a private hospital where he was kept until November 17.

While at the hospital Brewton was treated by Dr. Edwin G. Robinson. The doctor testified, without objection, concerning an admission made by Brewton, as follows:

"Q Now, during the course of the time that you were examining Mr. Brewton did he make any statement to you?

"A Well, he had very little to say. That morning when he first came in he was being brought in from this escapade and he was very numb and very depressed obviously. And once he said to me something about he wished they had shot him too."

The police made no attempt to interrogate Brewton while he was in the hospital, although there was admitted, without objection, testimony of a police officer, Joseph Ragnone, who guarded Brewton at the hospital concerning admissions made by the defendant during that time. Officer Ragnone testified in part as follows:

"Q What did he tell you?

"A Oh, he talked for a few minutes and he says that he was in a mess of trouble. I told him that he sure was. And I asked him why he did it and he stated that somebody is shooting at you and you have got to shoot back.

"Q Did he say anything else?

"A Yes, he did. He said that he saw the old man fall but he didn't see Gene get hit."

Brewton was returned to the city jail on Sunday, November 17, and was interviewed at about 2:00 o'clock in the afternoon by detective Michael O'Leary and Sergeant Tennant. O'Leary testified that during this interview Brewton freely admitted his participation in the robbery and told the story of the robbery in detail, including the events before and after. A written statement was typed which Brewton admitted was true but would not sign.

Later that same day, at about 8:30 p.m., Brewton was interviewed by detectives Einar C. Moen and Philip D. Jackson. Detective Moen testified that Brewton again freely admitted his participation in the robbery. The officer testified in part as follows:

"Q Now, what did the defendant tell you?

"A Oh, he discussed his part in the affair and gave us his story of what happened there.

"However, he refused to give us a signed statement.

"Q Now, will you relate to the jury what he told you, if you recall?

"A Well, he told us that he went into the grocery store with Eugene Taylor and that Taylor produced a gun and asked McKenzie where the lights were in the store. Mr. McKenzie told them where the light switch was at the front of the store and Brewton then turned and went to the light switch.

"About that time the shooting started. While his back was turned.

"Then he ran towards the front of the counter from the front of the store and in the act of jumping up on the counter a shot hit him in the hand and knocked the gun out of his hand and about that time Taylor says, 'Let's get out of here.'

"They both ran out the front door and Brewton running to the right and Taylor running to the left

and they circled the block and Brewton told us he went almost the whole way around the block before he came on to Taylor; that he was traveling under difficulty. Taylor told him he was hit and hurt and didn't think he could go on.

"Brewton went from there to get the car some two or three blocks away and drove back to pick up Taylor and he had considerable difficulty in getting Taylor into the car due to the fact that he had a bad arm from a previous auto accident.

"And he did finally succeed in dragging him into the back seat of the car. And then they drove from there to Taylor's mother's house, 1744 S. E. Marion, where he drove into the driveway.

"Brewton then told us he then knocked on the door and said that Gene was out in the car and talked to Taylor's mother and said that he was hurt and they had been in a fight.

"And we also asked him about what happened to his watch at the time of the events there in the store and then he—he told us he hadn't recalled losing the watch during the struggle there in the store itself, but he related that he lost his watch just before the officers picked him up in the vicinity of where he was picked up.

"That is the gist of the story."

■ The defendant objected to the testimony of detectives O'Leary and Moen on the ground that the oral confessions were involuntary. Thereupon the trial judge, out of the presence of the jury, heard the testimony offered by the state to prove that the confessions were voluntary. At the conclusion of that hearing the judge ruled that the evidence of the confessions would be received and that the issue of voluntariness would be submitted to the jury. The procedure followed was in accord with the well established rule in Oregon.

See, *State v. Nunn,* 212 Or 546, 321 P2d 356 (1958), where we said, at 212 Or 554:

> "Since the able analysis by Mr. Justice Harris in his concurring opinion in *State v. Morris,* 83 Or 429, 450, 163 P 567, it has been settled that the province of the trial judge is not to determine finally whether the confession was voluntary or not, but merely whether a prima facie showing has been made to warrant a finding that it was voluntary, in order to become admissible. Then, if it is admitted, the ultimate question of voluntariness is submitted to the jury as a part of their determination of the weight to be given to it. *State v. Rathie,* 101 Or 339, 350, 199 P 169; *State v. Green* [128 Or 49, 273 P 381] 128 Or at 51; *State v. Bouse,* 199 Or 676, 701, 264 P2d 800."

The Oregon procedure of submitting the question of voluntariness to the jury without a prior independent finding by the trial judge that the confession was voluntary has been followed in New York and a substantial number of other jurisdictions.[1] The New York procedure is described in *Jackson v. Denno,* 378 US 368, 84 S Ct 1774, 12 L ed2d 908 (1964) as follows:

> "Under the New York rule, the trial judge must make a preliminary determination regarding a confession offered by the prosecution and exclude it if in no circumstances could the confession be deemed voluntary. But if the evidence presents a fair question as to its voluntariness, as where certain facts bearing on the issue are in dispute or where reasonable men could differ over the inferences to be drawn from undisputed facts, the judge 'must receive the confession and leave to the jury,

---

[1] The appendices to Mr. Justice Black's dissenting opinion in Jackson v. Denno, 378 US 368, 84 S Ct 1774, 12 L ed2d 908 (1964), list Oregon and 14 other states, the District of Columbia, Puerto Rico, and six United States Courts of Appeal, as following the New York Rule.

under proper instructions, the ultimate determination of its voluntary character and also its truthfulness.' *Stein v. New York,* 346 US 156, 172, 97 L ed 1522, 1536, 73 S Ct 1077. If an issue of coercion is presented, the judge may not resolve conflicting evidence or arrive at his independent appraisal of the voluntariness of the confession, one way or the other. These matters he must leave to the jury." 12 L ed2d at 916.

The identity of the New York procedure with our Oregon procedure as described in *State v. Nunn,* supra, is apparent.

In *Jackson v. Denno,* supra, 12 L ed2d at 916, the Supreme Court held that the New York procedure "did not afford a reliable determination of the voluntariness of the confession offered in evidence at the trial, did not adequately protect Jackson's right to be free of a conviction based upon a coerced confession and therefore cannot withstand constitutional attack under the Due Process Clause of the Fourteenth Amendment." The holding of the Supreme Court was based on the premise that the trial jury called upon to determine the guilt or innocence of the defendant could not be relied upon to determine the voluntariness of a confession "uninfluenced by the truth or falsity of the confession." The holding in *Jackson v. Denno* is tantamount to an express holding that the use in the case at bar of our Oregon procedure is violative of the due process clause of the Fourteenth Amendment and requires us to vacate the judgment of conviction against Brewton.

■ The opinion in *Jackson v. Denno* also makes it clear that this court, as well as the New York and other courts which have followed the so-called New York

rule, must now adopt either the "orthodox" rule or the "Massachusetts" rule for determining the admissibility of confessions. Under the orthodox rule the judge hears the evidence and then solely and finally determines the voluntariness of the confession. If the judge finds the confession voluntary and admits it in evidence, the jury considers voluntariness only as affecting the weight or credibility of the confession.

Under the Massachusetts rule the judge hears all the evidence and must "fully and independently" (*Jackson v. Denno,* supra, 12 L ed2d at 917) resolve the issue of voluntariness against the accused before allowing the confession in evidence. If the judge finds the confession voluntary and admits it in evidence, the jury is then instructed that it must also find that the confession was voluntary before it may consider it. The responsibility of the judge under the Massachusetts procedure has been well stated by Rugg, C. J., in *Commonwealth v. Russ,* 232 Mass 58, 122 NE 176, 180 (1919) as follows:

"* * * The practice upon this matter is well settled in this commonwealth. In the first instance the decision rests with the presiding judge. If he thinks the confession or statement was not voluntary, he excludes it and the matter is ended unless some question of law is saved and reserved. But if he decides that it was voluntary, he admits it and then leaves the whole question whether it was voluntary, and if found to be so, its probative weight, to the determination of the jury. The decision of course must be made by the judge on his own responsibility regardless of the circumstance that the same question is subsequently to be submitted to the jury. He cannot shift his burden upon the shoulders of the jury. It is not a matter of discretion, but for judicial decision."

It will be noted that the duty of the judge fully to satisfy himself that the confession was made voluntarily before admitting it in evidence is the same under both the orthodox rule and the Massachusetts rule. The two procedures vary only as to the function of the jury after the confession has been admitted. Under the orthodox rule the jury is not concerned with the admissibility of the confession, but only with its credibility. Under the Massachusetts rule the jury is instructed that before it may consider the confession it must also find that the confession was made voluntarily.

The orthodox rule is generally recommended by legal scholars,[2] and has been approved by the Supreme Court of the United States. The Massachusetts rule, however, appeals to us as the better rule because by allowing the jury also to pass on the issue of voluntariness it preserves to the defendant his right to a jury trial on this critical issue.[3] The Supreme Court of the United States has also indicated in *Jackson v. Denno,* supra, its approval of the Massachusetts rule.[4]

[2] McCormick on Evidence 234, § 112 (1954); 3 Wigmore, Evidence (3d ed 1940) 345, § 861; Meltzer, *Involuntary Confessions: The Allocation of Responsibility between Judge and Jury,* 21 U Chi L Rev 317, 329 (1954).

[3] Oregon Constitution, Art I, § 11. "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; * * *"

[4] Jackson v. Denno, supra, 12 L ed2d at 916 n. 8. "We raise no question here concerning the Massachusetts procedure. In jurisdictions following this rule, the judge hears the confession evidence, himself resolves evidentiary conflicts and gives his own answer to the coercion issue, rejecting confessions he deems involuntary and admitting only those he believes voluntary. It is only the latter confessions that are heard by the jury, which may then, under this procedure, disagree with the judge, find the confession involuntary and ignore it. Given the integrity

The result of the decision in *Jackson v. Denno,* supra, is to compel us to vacate the judgment of conviction in this case and to remand this case to the trial court for further proceedings. As to that point we have no alternative. As pointed out in *Jackson,* however, it is not essential that we remand the case for a new trial. We are allowed some latitude in the choice of the further proceedings. Due process will be satisfied if the trial court, after a full hearing, finds that Brewton's confessions were voluntary. In this connection we point out that the voluntariness of the confessions must be determined in the light of the current decisions of the Supreme Court of the United States. See, *State v. Shipley,* 232 Or 354, 362, 375 P2d 237 (1962), cert. den. 374 US 811, 83 S Ct 1701, 10 L ed2d 1034 (1963).

We, therefore, reverse the judgment of conviction and remand this case to the trial court for further proceedings, which may be, at the election of the state, either (1) a hearing by the trial court to determine

---

of the preliminary proceedings before the judge, the Massachusetts procedure does not, in our opinion, pose hazards to the rights of a defendant. While no more will be known about the views of the jury than under the New York rule, the jury does not hear all confessions where there is a fair question of voluntariness, but only those which a judge actually and independently determines to be voluntary, based upon all of the evidence. The judge's consideration of voluntariness is carried out separate and aside from issues of the reliability of the confession and the guilt or innocence of the accused and without regard to the fact the issue may again be raised before the jury if decided against the defendant. The record will show the judge's conclusions in this regard and his findings upon the underlying facts may be express or ascertainable from the record.

"Once the confession is properly found to be voluntary by the judge, reconsideration of this issue by the jury does not, of course, improperly affect the jury's determination of the credibility or probativeness of the confession or its ultimate determination of guilt or innocence."

whether Brewton's confessions were voluntary, or (2) a new trial.

▮ If the state elects a new trial and decides to offer a confession in evidence, it should so advise the court *in camera*. The court in the absence of the jury should then hear all the evidence relevant to the voluntariness of the confession. The burden will rest on the state to prove to the satisfaction of the court that the confession was voluntary. If the court finds that the confession was voluntary, it shall note its finding in the record and admit the confession in evidence. Thereafter, as under our present practice, the state must again establish the voluntariness of the confession before the jury and the jury will hear all the evidence offered on that issue. The jury will be instructed that it has the duty to determine as a question of fact, first, whether the confession was voluntary, and second, if it was voluntary whether it was true, and that the issue of voluntariness shall be determined without regard to the truth or falsity of the confession. For an approved instruction conforming to the Massachusetts rule see *State v. Hood,* 69 Ariz 294, 213 P2d 368 at 371, 372 (1950).⑥

⑥ "* * * The following are the instructions given by the court which we approve: '* * * The law absolutely forbids you to consider a confession in determining the innocence or guilt of a defendant unless the confession was voluntarily made, and although the Court has admitted evidence tending to show that defendant made a confession, you must disregard the asserted confession entirely unless you yourselves, by your own weighing of all the evidence, your own judging of the credibility of the witnesses, and your own reasonable deductions conclude that the alleged confession not only was made but was voluntary. * * *'

"The court in that instruction also said: '* * * If under my instructions you find that a voluntary confession was made, you are the exclusive judges as to whether or not the confession was true, and in deciding that question you should consider all

If the state elects to prove that the confessions received in the trial of this case were voluntary, the trial court shall hold a hearing and determine whether Brewton's confessions were voluntary. If the court finds that the confessions were voluntary, it shall make an appropriate finding and enter a new judgment of conviction based on said finding and the verdict heretofore returned by the jury. Since in this case a life sentence is mandatory, there is no question concerning credit for time served on the sentence hereby vacated. Such credit would be appropriate if defendant was serving a definite term of years.

■ If the court finds that Brewton's confessions were not voluntary, it shall make an appropriate finding and enter an order allowing the state a reasonable time in which to elect to again try the defendant on the indictment against him, or to release him from custody.

■ Although in this opinion we have referred only to the admissibility of confessions, our holding is applicable with equal force to all alleged admissions of the defendant. See, ORS 136.540; McCormick, Evidence 236, § 113.

■■ Defendant's second assignment of error is directed to remarks made by the district attorney during his final argument to the jury. Defendant concedes that no objection was made to the argument in the court below and that no motion was made for a mistrial. Except in "rare cases" this court will not consider on appeal alleged error to which no proper objection was

---

the circumstances connected with the making of the statement as shown by the evidence. * * *' "

The first paragraph of the foregoing instruction should be supplemented to inform the jury that it should decide whether the confession was voluntary without regard to the truth or falsity of the confession.

made in the trial court. *State v. Avent,* 209 Or 181, 183, 302 P2d 549 (1956). The alleged error in this case does not warrant any departure from the general rule. We find no merit in this assignment of error.

This case is remanded to the circuit court for further proceedings not inconsistent herewith.

O'CONNELL, J., specially concurring.

I concur. I would add only that in my opinion the confession should not be submitted to the jury unless the trial judge is convinced beyond a reasonable doubt that it was voluntarily made. I believe that the jury should also be instructed to the same effect. See *Bram v. United States,* 168 US 532, 18 S Ct 183, 42 L Ed 568 (1897); *Johnson v. State,* 107 Miss 196, 65 So 218 (1914); *Ellis v. The State,* 65 Miss 44, 3 So 188 (1887).