Argued November 30, 1965, affirmed January 12, petition for
rehearing denied February 23, 1966

# STATE OF OREGON *v.* ATHERTON
## 410 P. 2d 208

*Oscar D. Howlett,* Portland, argued the cause and filed a brief for appellant.

*George M. Joseph,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, and Tom P. Price, Deputy District Attorney, Portland.

Before McAllister, Chief Justice, and Perry,

SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

## GOODWIN, J.

This is an appeal from a conviction of violating ORS 163.280 (armed robbery). The only substantial issue is whether the defendant's confession was admissible.

A tavern was robbed at gunpoint by two men. A short time later one man was found in an automobile which answered a description given by witnesses. The automobile was stopped by a police officer and the defendant Atherton was placed under arrest and taken to the city jail.

At the trial, during a hearing out of the presence of the jury as required under *State v. Brewton,* 238 Or 590, 603, 395 P2d 874 (1964), an officer testified:

"Well, I brought him to the robbery office and started to inform him of his legal rights, at which time he interrupted us and informed us that he had been in contact with his attorney, Milton Brown, and had been advised not to make any statements."

There was no further effort to question the defendant that day.

Two days later, a second officer saw the defendant in jail. The second officer gave this account of his conversation with the defendant:

"* * * [A]t which time I identified myself, and told him what he was being charged with or accused of, and that it was not necessary for him to talk to me about the case without first having legal advice of counsel. At this time he informed me that he had already retained counsel, and that

until such time as he had seen his counsel, he had nothing more to say. At this time, why, I immediately left his presence."

The defendant must have said something more to this officer, however, for the officer went on to testify that he told the defendant before leaving him that he would check out certain alibi information which the defendant apparently had given the officer.

The next day, according to the officer's recollection, he reported back to the defendant concerning the alibi. The defendant then became upset, the officer stated, and volunteered the identification of the "second subject involved," one Roberts.

The next day, the fourth day after the defendant's arrest, the officer again visited the defendant in jail. The defendant's attorney had not yet visited the defendant, apparently because he was occupied with other matters. In any event, the defendant reported to the officer that he had not seen his attorney. The officer questioned him, however, about the holdup, and the defendant confessed.

The defendant took the stand and told his version of the interrogation. He recalled the time in jail as four days of more or less incessant questioning. He denied that he had been advised of his right to remain silent, and denied that the officers had advised him that he could see his attorney any time he wanted to.

At no time has the defendant contended that there was any wrongful delay after his arrest in bringing him before a magistrate. Accordingly, we are not called upon to decide whether the delay, if challenged, in itself would have been a ground for excluding the confession.

The only errors assigned in this appeal are based

upon the defendant's contention that his confession was obtained by police interrogation in violation of his rights as set forth in *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965). He asks us to rule as a matter of law that the confession was inadmissible despite the findings of the trial court that the defendant had been effectively advised of his rights and that his confession thereafter was voluntarily made.

The record affords no basis for this court to overturn the trial court's findings of fact. The defendant, faced with a specific finding that he had been effectively advised of his rights, asks this court now to extend the holding in *State v. Neely,* supra, to hold, as a matter of law, that any police interrogation after arrest is illegal. The defendant contends that such an implementation of the Sixth Amendment right to counsel is required by the decision in *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed2d 977 (1964). The effect of such a holding would be to make irrelevant the issue in the *Brewton* case of voluntariness under the Fifth Amendment.

There are two factual differences between the interrogation of this defendant and the interrogation of the celebrated Danny Escobedo. The police did warn this defendant of his right to remain silent. The police did not warn Escobedo of his right to remain silent. The failure to warn Escobedo of his right to remain silent was deemed important in light of the second difference between the two cases. In *Escobedo,* the police actively interfered with the attorney-client relationship. The police kept the prisoner and his attorney apart despite requests from both for consultation. In the case at bar there is no claim either of police interference or of a denial of an opportunity to consult.

The *Escobedo* case, and subsequently, in this state, the *Neely* case, held that a statement taken from a person under arrest who had not been effectively advised of his right to remain silent, and who had been denied the assistance of counsel (or, as in *Neely,* not informed of his right to counsel), cannot be received in evidence. Neither case requires the exclusion of a voluntary statement obtained from a prisoner who has received and has understood the requisite advice concerning his rights.

■ In *Neely* we held that the right to counsel and the right to remain silent are substantially without meaning to a person under arrest unless he knows that he has these rights. There is no waiver without knowledge. *State v. Keller,* 240 Or 442, 402 P2d 521 (1965). Conversely, with knowledge, there can be a waiver. In *State v. Keller,* we held that whether or not the defendant was adequately advised of and waived his rights is a question of fact which, like that of voluntariness, the trial court must decide in a preliminary way before any of the evidence concerning the statement can be heard by the jury.

■■ We adhere to the rule that the prosecution, if it expects to use statements made by a person under arrest, must show that, prior to his interrogation, he was advised both of his right to remain silent and of his right to the assistance of counsel. Obviously, after showing that the defendant had been advised of his rights, the state must also show that any statement offered in evidence was voluntarily given. The courts will view with suspicion the voluntariness of a statement taken from a prisoner whose reluctance to talk to the police in the absence of counsel had to be worn away by persistent interrogation.

In the case at bar, the trial court found, as facts: (1) the defendant knew that he was not required to talk; (2) he knew that he could consult counsel whenever he and his attorney could get together; and (3) with knowledge of his rights he was willing nonetheless to talk to the police in the absence of his counsel.

■ If the defendant was properly advised, voluntariness then becomes a question of fact. Some factors that may be relevant in the trial judge's determination of the issue of voluntariness are described in recent decisions of the United States Supreme Court. See, e.g., *Jackson v. Denno,* 378 US 368, 84 S Ct 1774, 12 L Ed2d 908, 1 ALR3d 1205 (1964); *Haynes v. Washington,* 373 US 503, 83 S Ct 1336, 10 L Ed2d 513 (1963); *Blackburn v. Alabama,* 361 US 199, 80 S Ct 274, 4 L Ed2d 242 (1960).

The defendant contends that decisions prior to *Massiah v. United States,* 377 US 201, 84 S Ct 1199, 12 L Ed2d 246 (1964) can no longer be relied upon to justify the admission of voluntary confessions made in the absence of counsel. In the *Massiah* case, however, the police obtained the incriminating statements by the use of a hidden microphone, and with the help of an informer believed by the defendant to be an ally. There was no voluntary disclosure of evidence to the police by a suspect who knew that he was talking to the police. The *Massiah* case therefore has to be embellished before it can be said to hold that the police may never talk to a defendant who has an attorney unless the attorney is present.

While the New York courts have, apparently,[①] adopted rules which as a practical matter prohibit any interrogation of a defendant after arrest, we do not

---

① People v. Meyer, 11 NY2d 162, 182 NE2d 103 (1962).

believe that such rules necessarily must follow from the Fifth and Sixth Amendments. Neither the right to remain silent nor the right to counsel is a right that cannot be waived.

One of the notions which underlies the retributive aspects of criminal justice is that the criminal knew what he was doing when he committed the crime. After a person is arrested and accused of a crime, the Fifth Amendment denies the government the right to force him to admit his guilt. The Sixth Amendment requires the government to advise him of his right to counsel and see that he has an attorney, if he wants one, at all times after the adversary phase of the prosecution has commenced. Nothing, however, in the philosophy underlying these two great guardians of freedom requires the police to refrain from discussing a crime with a suspect who wants to discuss it, if he has been fully advised of his rights and has decided to talk in spite of his knowledge that he need not do so. Once it is shown that an accused knew what he was doing when he talked to the police, and that he did so with full knowledge of his rights, he ought to be just as responsible for his decision to talk as he is for his decision to commit the crime in the first place. See concurring opinion of Traynor, J., in *People v. Garner*, 57 Cal2d 135, 156, 18 Cal Rptr 40, 53, 367 P2d 680, 693 (1961), cert. denied 370 US 929, 82 S Ct 1571, 8 L Ed2d 508 (1962). The confession in the case at bar was admissible.

Finally, the defendant challenges a ruling which denied his motion to strike certain testimony by a police officer.

After a preliminary ruling that the jury could hear the evidence concerning the statements

which the defendant had made to the police, one of the officers began to testify. During this testimony, which was narrative in form, the officer told the jury how he happened to be talking with the defendant on the occasion when the confession was made. The testimony objected to was as follows:

"I told him that I had checked out the time element that was involved in this holdup and the persons that he had told me to contact, and I told him of my findings in regard to this, and at this time I pressed him a little bit as to a possible identification of the second subject involved."

An objection and motion to strike interrupted further development of this line of testimony. Error is assigned because the jury was not instructed to disregard the officer's testimony. Nothing that the jury heard from the officer informed them directly that the defendant's alibi may have been a fabrication. Perhaps, however, such an inference could have been constructed from the officer's testimony. But the officer did not attempt to insert any hearsay evidence. The objection was properly overruled. The fact that damaging inferences can be drawn from testimony does not make testimony inadmissible. The evidence which the jury heard was competent evidence, and it was relevant on the issue of voluntariness. There was no error in receiving it.

Affirmed.

DENECKE, J., dissenting.

I consider the holding of the majority to be that a confession is admissible although it is obtained by interrogation outside the presence of counsel from a defendant represented by counsel. The majority reasons that by confessing, the defendant ipso facto

waived his right to remain silent and his right to the assistance of counsel.

In *Massiah v. United States,* 377 US 201, 84 S Ct 1199, 12 L ed2d 246 (1964), the defendant had been indicted and had counsel. The government persuaded a co-indictee, Colson, to get the defendant into Colson's car, in which the government had hidden a radio transmitter. Colson was to discuss the crime, which he did. A government man listened to the radio transmission of the conversation and testified at the trial to admissions made by the defendant. The Court reversed, holding that the testimony of defendant's admissions was inadmissible. The Court held:

> "Here we deal not with a state court conviction, but with a federal case, where the specific guarantee of the Sixth Amendment directly applies. *Johnson v. Zerbst,* 304 U. S. 458. We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. \* \* \*" 377 US at 205-206.

The defendant had urged that the evidence was inadmissible because it was the product of an unreasonable search and seizure, but the Court stated it did not reach the search and seizure issue and decided the case squarely on the ground of right to counsel.

The basis of the Court's decision is even more clearly indicated by its reference to the New York cases. The Court said:

> "Ever since this Court's decision in the *Spano* case, the New York courts have unequivocally followed this constitutional rule. 'Any secret interrogation of the defendant, from and after the finding

of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.' *People v. Waterman,* 9 N. Y. 2d 561, 565, 175 N. E. 2d 445, 448.

"This view no more than reflects a constitutional principle established as long ago as *Powell v. Alabama,* 287 U. S. 45 * * *." 377 US at 204-205.

New York subsequently has gone even further. In *People v. Meyer,* 11 NY2d 162, 227 NYS2d 427, 182 NE2d 103, 104 (1962), the court stated:

"The question on this appeal is whether a voluntary, unsolicited statement made by an accused to a police officer after arraignment following his arrest and before indictment is admissible in evidence against him. It is undisputed that upon the arraignment this accused was informed of his rights, including his rights to counsel, and that he requested none (Code Criminal Procedure, § 188) and had no counsel at the time the challenged statement was made. * * *"

The court held:

"* * * While an accused may waive a fundamental right, he did not do so here, nor is he estopped because he had made no request when informed of his rights. We thus conclude that any statement made by an accused after arraignment not in the presence of counsel as in Spano, Di Biasi and Waterman (supra) is inadmissible."[①] 182 NE2d at 104.

*Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L ed2d 977 (1964), applied the *Massiah* rule to state court proceedings and eliminated the time of indictment as the time when the right to the assistance of counsel commenced.

---

[①] I am not suggesting we go this far.

The one opinion that supports the majority's decision is *People v. Garner,* 57 Cal2d 135, 18 Cal Rptr 40, 367 P2d 680, 693, cert den 370 US 929, 82 S Ct 1571, 8 L ed2d 508 (1962), particularly Mr. Justice Traynor's concurring opinion. It was decided prior to *Escobedo v. Illinois,* supra, and *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L ed2d 799, 93 ALR2d 733 (1963). Those decisions appear to have cut away much of the foundation for Mr. Justice Traynor's reasoning.

There have been advanced two possible underlying motives for the decisions in *Massiah* and *Escobedo.* One line of reasoning is as follows: Without the presence of counsel, the only witnesses to the circumstances under which a confession is made are the defendant and the police. The trial court will usually believe the police.[2] This is only human and a matter of experience, and in the majority of cases is probably a correct assessment of the testimony. Nevertheless, it makes the question of voluntariness usually dependent upon the accuracy of the police testimony. Involuntary confessions are more apt to be untruthful than are voluntary confessions. All courts are now wedded to the proposition that involuntary confessions, truthful or not, are inadmissible. The requirement that counsel be present at interrogation would largely insure that confessions would not be coerced and that if there is a question of fact on coercion, the trial court will have the advantage of counsel's testimony which

---

[2] This is exactly what happened here:

"THE COURT: Well, it boils down to whether or not the Court believes Officer Wold or whether the Court believes this defendant. I have to believe one or the other, and between the two of them, I believe Officer Wold. * * *"

ideally will be completely objective and, at the least, should be no more biased than that of the police.

The other reason is only indirectly connected with voluntariness. It is that one of the constitutional rights of individuals is to be free from secret police interrogation; or, stated differently, a right to have counsel present when being interrogated by the police. This is apart from the threat that secret police interrogation without counsel tends to be coercive.

In my opinion, the majority's decision seems contrary to either of the above-stated purposes.

The testimony of the principal interrogator in this case seems to me to negate a conscious intelligent waiver of the right to counsel. According to the police officer's testimony, the defendant must have been told by his attorney before his arrest not to talk without first seeing his attorney. The defendant denies he ever talked to his attorney. According to the police, after defendant was in jail for three days, on June seventh, he told the interrogating officer he had an alibi and gave his alibi. I infer from the detective's testimony that he told the defendant on June eighth that his alibi did not check out. At this time the detective testified:

"* * * he [defendant] was upset at this time, due to the fact that he had not seen his counsel, and in talking with him, why, it eventually got around to the second subject involved, and at this time I—he identified that subject as Harry Boy Roberts.

"Shortly after that, I went to the identification bureau and obtained a photograph of Henry Lee Roberts, took it back to the jail division, and showed it to Mr. Atherton, and at this time he identified him as being the Harry Boy that he had told me of.

"Still not having seen his counsel, why, I again

did not press him on any further implication of himself. On the 9th I again talked to him. He still hadn't seen his counsel, and as a consequence I did question him, regardless, about his own participation, and at this time, why, he told me of the entire holdup."[9]

For the above reasons, I dissent.

SLOAN, J., joins in this dissent.

---

[9] Perhaps the decision could be affirmed upon the ground that the defendant was given ample time to retain counsel and he failed to do so and the police do not have to delay further investigation because the defendant or his counsel do not act with reasonable dispatch. However, this was not the ground upon which the majority bases its decision.