Argued December 1, 1965, affirmed January 12, 1966

# STATE OF OREGON *v.* ROSENBURGER

409 P. 2d 684

*Vincent G. Robeson,* Portland, argued the cause and filed a brief for appellant.

*George M. Joseph,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, and Carr M. King, Deputy District Attorney, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

## PERRY, J.

The defendant was convicted of the crime of receiving and concealing stolen property, and appeals.

The defendant's claim of error is based upon the trial court's admission into evidence of oral statements made by defendant to officer Percell, which amounted to a confession. These statements were made after defendant had been charged with the crime and was in custody.

Before permitting the officer to testify, the trial court heard the testimony of the officer out of the presence of the jury and with the defendant and his attorney present. At this time and at no time did the defendant or any witness testify contrary to the facts testified to by the officer.

Officer Percell testified before the trial court as follows:

"I identified myself to him as a police officer, Detective, Auto Theft Detail. I told him I was assigned to this investigation, advised him of his constitutional rights.

"* * * * *

"I advised Mr. Rosenburger that he need tell me nothing, that he had a right to remain silent, that if he did tell me anything it could be used against him in court. I further told him that he had a right to an attorney and that if he did not have funds to hire an attorney that the State would appoint him an attorney.

"* * * * *

"He indicated to me that he had been in touch with and had retained Mr. Bill Lang[ley] as his attorney but that he hadn't conferred with Mr. Langley and did not wish to make any statement until such time as he had conferred with him.

"* * * * *

"Yes, he was taken to court that day, the first day that I talked to him, and at that time he requested a continuance on the case and indicated to the court that he was represented by counsel but that he was undetermined as to what he was going to do."

The officer had no further conversation with the defendant at this time. Subsequently, and on or about the 25th of November, 1964, the date set for defendant's preliminary hearing, the officer escorted the defendant to the court room where the defendant advised the presiding judge that he was now without counsel, desired the appointment of counsel, and a continuance of his hearing. The trial court continued the hearing, advised defendant he would appoint counsel, and advised defendant of his right to remain silent. Shortly after this court appearance the officer again talked to the defendant. The state had anticipated a preliminary hearing that morning and there was present at the time Officer Percell talked to defendant one Gary Scott. Percell testified as follows:

"* * * As it developed it was not held that day so one of the subjects in my office requested that he be allowed to talk to John. I went in the courtroom and I told John that Gary Scott was in my office and wished to talk to him and asked him if he would like to talk to him. He said yes, he would talk to him, so I brought him back to our office, auto theft detail, and at this time he and Gary Scott and myself sat down at one of the desks."

Percell further testified:

"Q Did you at this point have a conversation with Mr. Rosenburger?

"A Yes, I did.

"Q Did you ask him questions and receive answers?

"A Yes, I did.

"Q * * * Did you use any force or duress to get the defendant to talk to you?

"A Absolutely not.

"* * * * * *

"Q Prior to your talking to him on this 25th, did he ask you to, did he tell you, did he ask you to have an attorney before he talked to you?

"A He did the first time that I talked to him but during the interim on that Monday he had talked to Mr. Langley and then the second time that I talked to him on the 25th I believe it was, or Wednesday, he had talked to Mr. Langley but had decided that he was going to ask for State-appointed counsel rather than hire his own.

"* * * * * *

"Q Now, will you tell the Court what your conversation with Mr. Rosenburger was?

"A As I said, we sat down at the desk there and I previously talked to Mr. Scott and Mr. Scott had told me one story of what had transpired so at this time in the presence of Mr. Scott and Mr. Rosenburger I detailed to Mr. Rosenburger exactly what Scott had told me and I asked Scott to confirm this. At this time Rosenburger denied the allegations of the story as told by Mr. Scott.

"Q Go ahead.

"A I talked to him further and after Mr. Scott had talked to him and told him now, this is what we did and this is the way it is, then Mr. Rosenburger stated 'Yes, I was the man that was down there. I was with him. I was the one that sold the clubs.' And he further indicated to me that he had signed the slip that he gave to Mr. Caplan, that he had used a fictitious name and he said that he had represented that these clubs belonged to a brother and I asked him why he had misrepresented

his name, used an assumed name, and why he had denied being in Caplan's; and he told me, at that time he made the statement 'I guess I will have to admit it. I figured the clubs were hot.' "

The officer then detailed the statements made by the defendant in relation to the stolen property.

The trial court then made a finding that the statements of the defendant were voluntarily made with full knowledge of his constitutional rights. We agree. See *State v. Atherton,* 242 Or 621, 410 P2d 208, this day decided on the merits.

The defendant relies upon language contained in *Bram v. United States,* 168 US 532, 563, 18 S Ct 183, 42 L ed 568, to establish his contention that the statements of the defendant were not voluntary. There is some language therein that gives comfort to the defendant, but an examination of that case discloses that the majority's opinion is based upon the totality of the circumstances surrounding the obtaining of that defendant's statement so that in fact there was an entrapment. No such circumstances are here present. After being fully advised of his rights, the defendant was given the opportunity to face Scott or not as he saw fit.

The judgment is affirmed.

DENECKE, J., dissenting.

The critical facts are as follows: A police officer and, later, a magistrate informed the defendant of his right to remain silent and of his right to counsel. The defendant asked the magistrate to provide court-appointed counsel and the magistrate told the defendant that this would be done. Immediately after the appearance in the magistrate's court, before the magis-

trate had an opportunity to appoint counsel or before appointed counsel could advise the defendant, the police resumed their interrogation and obtained a confession from the defendant.

The majority opinion affirms the trial court's admission of the defendant's statement for the reason that the statement was made "with full knowledge of his constitutional rights." In my opinion this does not answer defendant's contention. The defendant contends that after he was informed of his right to counsel and thereupon requested that counsel be appointed, any answers he gave to further interrogation carried on before the defendant has the benefit of counsel are inadmissible.

The defendant being advised of his right to counsel is only the first step. We have consistently stated that in addition to advising a defendant of his constitutional rights, "Further, the record must show that these rights were understandingly waived by the defendant before a confession obtained by interrogation may be used in court." *State v. Ervin,* 241 Or 475, 406 P2d 901, 902 (1965). To the same effect see *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965); *State v. Keller,* 240 Or 442, 402 P2d 521, 525 (1965).

Here, the record conclusively shows that defendant did not waive his right to counsel. He chose to exercise such right and asked for a court-appointed attorney. The police obtained the statement after the defendant had clearly evidenced his nonwaiver of his constitutional right to counsel and before the defendant was reasonably able to obtain the assistance of counsel.

For some time this court has held that a defendant at trial has the right to the assistance of counsel. If

the trial court informed the defendant of this right, the defendant requested the appointment of counsel, and the trial court, however, went ahead and tried the defendant without counsel, I am certain this court would not affirm such a conviction. In my opinion the situation at trial and during pretrial interrogation is identical.

Our concern with the problem of whether and when an accused must be advised of his constitutional rights may have diverted our attention from the main thrust of *Escobedo v. Illinois,* 378 US 478, 491, 84 S Ct 1758, 12 L ed2d 977 (1964). It was there held that the defendant had "requested and been denied an opportunity to consult with his lawyer" and, therefore, his statements made to the interrogating officers were inadmissible.

The only differences in the facts here are that Rosenburger was indigent and had to consult with a court-appointed attorney and the police did not physically deny counsel access. The police were able to successfully complete their interrogation before the defendant was able to secure the assistance of counsel.

In *Massiah v. United States,* 377 US 201, 206, 84 S Ct 1199, 12 L ed2d 246 (1964), the court stated: "We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." The differences from the present case are that in *Massiah* the statements were obtained after indictment and the defendant had already secured and retained an attorney. I doubt if these differences make the present statement admissible.

The California court has just decided the identical issue presented here. In *People v. Stockman,* — Cal 2d —, 47 Cal Rptr 365, 407 P2d 277, 281 (1965), the court stated:

"In the instant case Cathcart asked for an attorney before making a statement (he was then told that the court would appoint him one). The record also shows Stockman actually contacted an attorney by telephone (who was unable to get to him before he confessed). But the persistence of the police in continuing to interrogate the accused after such requests were made known to them clearly violated the constitutional rights of these appellants. * * *"

I would reverse.

SLOAN, J., joins in this dissent.