Argued May 9, affirmed October 2, 1968

# STATE OF OREGON, *Respondent, v.*
# FLOYD W. WHITEWATER,
## *Appellant.*

445 P. 2d 594

*Gordon L. Macpherson,* Toledo, argued the cause and filed a brief for appellant.

*A. R. McMullen,* District Attorney, Newport, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, C. J.

The defendant Floyd Wayne Whitewater was convicted of the crime of burglary not in a dwelling and appeals.

The facts are that on July 24, 1966, at approximately 2:30 in the morning, the defendant was arrested in the city of Newport. Two warrants had been issued for the defendant charging him with operating a motor vehicle while his driver's license was suspended. He was observed this July morning again operating a motor vehicle and when the officers attempted to overtake him and take him into custody he tried to elude the officers. After hot pursuit, he was taken into custody and further charged with leaving the scene of an accident, reckless driving and driving while his license was suspended. He was taken at once before the municipal judge, and being unable to post bail, the court ordered that he be incarcerated in the county jail. He later pleaded guilty to each charge.

While the defendant was being booked in at the county jail, a police officer noted that the heels on defendant's boots appeared to be capable of making marks such as he had noticed at the scene of several burglaries in Newport. After defendant had deposited

his clothing in a box provided for that purpose by the jailer, the officer, after receipting for the boots, took them into his possession. The officer then caused the boots, together with a piece of broken window glass which was found at the scene of the burglary and upon which a heel print appeared, to be sent to the Oregon State Crime Laboratory. The laboratory ascertained that the heel of defendant's right boot had made the heel mark on the piece of glass.

The defendant filed a motion to suppress the evidence relative to the heel mark on the ground that this evidence resulted from an unlawful seizure of the defendant's boots. The defendant makes a three-pronged attack upon the seizure: (1) that the arrest was a subterfuge; (2) the seizure was unreasonable as it was not made at the time of arrest; and (3) the officer was not authorized to seize the boots as evidence of a burglary since the arrest was for another offense.

The record discloses the officers prior to the arrest entertained a suspicion that defendant may have been implicated in several burglaries in the city, and, therefore, the defendant contends that his arrest for prior motor vehicle law violations was only a subterfuge by the officers to get the defendant into their custody so they could examine his boots.

■ There is no merit in this contention since, as previously stated, the record discloses that sometime prior to defendant's arrest two warrants had been issued out of the court commanding the officers to arrest the defendant. Therefore, it was the official duty of the officers to make the arrest as commanded, regardless of their suspicions.

■ The defendant's second contention is based upon the fact that the boots were seized at the jail and not at the time of or place of arrest. He argues that absent

a search warrant the actions of the police constituted an unreasonable seizure.

There is no merit in this contention. There was only a seizure and no search was ever made. ORS 142.210 requires a prisoner when booked to turn over to the jailer his possessions.

■ The answer to defendant's third contention is found in *State v. Elk*, 249 Or 614, 439 P2d 1011, and cases cited therein, where we pointed out that if in the course of a lawful search evidence of another crime is discovered the evidence may be seized if the officers have probable cause to believe the seized evidence may relate to another crime.

There is no question but that the officer involved saw the heel marks at the scene of the burglary and on seeing the heels of the boots of the defendant was in a position to form a reasonable belief that the boot heels were capable of leaving such a mark as noted at the scene of the burglary.

The trial court did not err in overruling the motion to suppress and in admitting the boots into evidence.

The defendant for his second assignment of error alleges that the trial court erred in admitting into evidence over his objection the following testimony of officer Hollowell:

"* * * I asked him if he could explain why the heel print of his boot appeared upon the glass that was found at the burglary at Carr-Miller's.
"* * * He could not answer that question or said he could not explain why his heel print appeared."

The defendant prior to the giving of the above answer had been charged with two burglaries. He had

been taken before the district court where he was advised of his constitutional rights and at his request he was advised he would be furnished counsel at state expense. Before being questioned he was again advised by the officer that he need not answer any questions and that if he did so they could be used against him in court. Neither the defendant nor any witness contradicted these facts.

There is no evidence of any coercion or oppression, nor evidence that could lead a trier of fact to doubt but that defendant fully understood his constitutional rights.

■ When a defendant is fully advised of his rights and knows what he is doing, the responsibility, in the absence of some showing of coercion, rests with him. If he decided to answer questions under these circumstances without first talking to counsel or having counsel present, the evidence of his statements is admissible. *State v. Rosenburger*, 242 Or 376, 409 P2d 684; *State v. Atherton*, 242 Or 621, 410 P2d 208, cert. to US S Ct denied 384 US 1025.

The judgment of the trial court is affirmed.

DENECKE, J., dissenting.

I dissent from that part of the majority decision holding that Chief Hollowell's testimony of admissions made to him by the defendant was admissible. I realize that a majority of this court decided contrary to my position in *State v. Rosenburger*, 242 Or 376, 409 P2d 684 (1966). In my opinion the evidence in this case is another good illustration of why that decision should be overruled. I understand *State v. Rosenburger*, supra (242 Or 376), to decide that although an accused in custody has asked the court to have an attorney appointed and the court has so ordered, the

police may continue to interrogate, and if the accused succumbs to the interrogation and talks, his answers are admissible.

The police chief stated:

"A: If the Court appointed attorney was represented—representing him, I doubt very much there was time lapsed enough for an appointment of the attorney.

"Q: So you hurried up there to talk to him before counsel was appointed?

"A: In fact, we talked, I escourted [sic] him to the District Court to fill out the affidavit for requesting a court appointed attorney. I escourted [sic] him back to the county jail and at that time I asked him if he would be willing to talk to me about the matter, and he indicated it—

"Q: I don't want to know what he indicated now.

"A: All right.

"Q: Don't volunteer what he indicated.

"A: And, we proceeded to talk about the matter right from the District Court to the county jail and into the attorney's room inside the county jail."

The right of an accused to have an attorney and to be advised that he has the right to have an attorney present at his interrogation seem to me to be of little consequence if we continue to follow the *Rosenburger* rule.

O'CONNELL, J., joins in this dissent.