Argued August 23, affirmed October 12, 1972

STATE OF OREGON, *Respondent, v.* ROBERT
DEAN SWARTSFAGER, *Appellant.*

501 P2d 1321

*Edwin A. York,* Portland, argued the cause and filed the brief for appellant.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Defendant was convicted of unlawful possession of marihuana. Former ORS 474.020. He appeals, assigning as sole error the denial of his motion to suppress evidence.

At approximately 11 p.m. the defendant, a minor, was observed by the arresting officer operating a motor vehicle at a high rate of speed. He was alone in the car. When asked for his license, he gave the officer a license of another person as his own. However, one of the arresting officers, Anderson, knew the defendant as the result of a prior automobile accident investigation, and that he was driving with a suspended operator's license. Upon bringing the defendant to a stop, one of the officers observed the defendant place an object on the floorboard and upon closer examination found it to be a half full stubby of beer. Another unopened bottle of beer was on the front seat. The defendant was then placed under arrest for being a minor in possession of liquor. The officer then determined to transport him to jail. Defendant was searched while leaning forward with his hands on the side of the patrol car and prior to being placed therein. This was normal police procedure. The officer first removed a wallet from the right hip pocket and another from the left rear pocket. While doing so, he also felt a soft lumpy object in the left rear trouser pocket. Thereupon he removed from that pocket a clear cellophane baggie containing what the officers recognized to be marihuana. Neither the cellophane bag nor

the marihuana was visible prior to its removal from the pocket. The defendant was then transported to jail.

Defendant does not challenge the validity of the arrest nor the decision of the officers prior to the search to transport him to jail on the misdemeanor charge. He concedes that the officer had a right to search him for weapons at the scene prior to transporting him in the police car. He contends, however, that the search exceeded the allowable scope since the soft "bulge" was not indicative of a weapon, and thus, though the officer had a right to feel it from the exterior as a part of the pat-down search for weapons, he did not have the right to remove it from his pocket.

The evidence was uncontradicted that police procedure prior to transporting an arrested person to jail in a police vehicle required a search.

The officer testified:

"A [By Officer Anderson] Ever since I've been out of the academy, I've been told that it's our procedure any time we take a prisoner into custody prior to placing him in the back seat, we remove all of his property and take custody of it. This is so that a small object, such as a handcuff key, perhaps even a ball point pen, which might be used to get somebody loose from his restraints or any potential weapon might—might be taken up that could be used against the officer or any contraband that might be on the person be taken away so that it would not be lost behind—perhaps behind the seats or stuffed under the front seat; been several instances in our—in the department of items of contraband found between the seats after prisoners have been transported.

"Q [By Mr. Ashenfelter] Well, then, your practice is that you remove everything from the

person's pockets who's going to be transported to jail—

"A  Yes, sir.

"Q  — before you transport him?

"A  Right, sir.

"Q  And in this particular case, given the charge of minor in possession, you would be transporting him to jail as opposed to issuing a citation?

"A  That's correct, sir."

ORS 142.210 provides:

"Whenever any jailer, peace officer or health officer takes or receives any money or other valuables from any prisoner or person in custody for safekeeping or for other purposes, the officer or jailer receiving such valuables or money forthwith shall tender one of duplicate receipts for the property being surrendered to the prisoner or person in custody. If possible, the prisoner or person in custody shall countersign both the original and duplicate receipts. If the prisoner or person is unable to sign the receipts or receive the duplicate thereof, the same shall be signed by and delivered to the prisoner or person when reasonably possible. A file of the original receipts shall be kept for at least six months after the money or valuables have been returned to the prisoner, his agent or representative or other person entitled to the same."

The Supreme Court has held this statute requires a prisoner to turn over to the jailer his belongings at the time he is booked. *State v. Whitewater,* 251 Or 304, 307, 445 P2d 594 (1968).

Nothing in that statute prohibits the police from inventorying the belongings of an arrested person who is about to be transported from the place of arrest to jail.

In *Morel v. Superior Court,* 10 Cal App 3d 913, 917-18, 89 Cal Rptr 297 (1970), the court considered at length the problem here presented, and said:

"* * * We hold that when the officer has taken an alleged offender into custody and is about to transport him * * * the officer may search the person of the arrestee. * * * Our reasons are these:

"1) A more thorough search for weapons, perhaps smaller ones and less typical than those looked for in the pat-down, and also for any instruments which might facilitate escape, is allowable when the person is in custody.

"2) The officer assumes new duties when the arrestee is placed in the police vehicle and the officer has new actions to perform. The officer must prevent escape; he is responsible for the safety of the arrestee; he must attend to driving and cannot give complete attention to the person under his custody; and even if he is relieved from certain other duties while transporting the arrestee, the officer may come upon events in the apprehension of criminals or in other emergencies which require action on his part.

"3) The officer may be transporting more than one arrestee and he must give protection to each.

"4) Finally, there is the important matter of contraband. There is a natural inclination of the possessor of contraband to dispose of it when he is taken into custody if he has not been able to get rid of it earlier. It is not by any means a speculation that contraband may be deposited in a police vehicle. * * *

"Search as thorough as is practicable under the circumstances before a person under arrest is placed in a police vehicle seems to us to be thoroughly justifiable for the fixing of responsibility on the right party if contraband is found in the car. Thus, not only is the guilty party identified but those who

are innocent are protected. The police, too, are relieved from the awkward situation of having had contraband deposited in their vehicle."

Defendant relies primarily on *State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968). There the defendant had been arrested for driving a vehicle which had no rear license plate and was also given other traffic citations. While he was seated in the police car, on request he handed his wallet to a police officer. The officer then went through the wallet and found a half burned marihuana cigarette. The court held the cigarette should have been suppressed. There, however, the search was of the wallet, after it had already been delivered by the defendant to the police. No reason existed to investigate its contents. The court held that the search of the wallet was entirely unrelated to the traffic offense for which the defendant had been arrested.

We agree with the trial court that the search of the defendant and seizure of the marihuana pursuant thereto was lawful. The procedure followed was reasonable both for the protection of the police and of the defendant. *State v. Raiford,* 7 Or App 302, 490 P2d 1036 (1971); *State v. Sorgenfrei,* 7 Or App 442, 490 P2d 1040 (1971), Sup Ct *review denied* (1972).

Affirmed.