Argued and submitted October 17,
reversed and remanded December 24, 1979

## STATE OF OREGON,
### *Respondent,*
#### *v.*
## MICHAEL HOWARD WHEELER,
### *Appellant.*

### (No. 35854, CA 13746)

604 P2d 449

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Michael J. Francis, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

**CAMPBELL, J.**

Defendant, after trial by jury, was convicted of coercion, ORS 163.275. On appeal, he assigns as error (1) the admission, over timely objection, of statements he made to police, and (2) the trial court's exclusion of testimony relevant to a justification defense under ORS 161.209, use of physical force in defense of a person. We hold that the trial court committed prejudicial error in excluding the testimony on justification, and reverse and remand for new trial.

A domestic disturbance between Dawn and Ron Hayes, husband and wife, over Ron's visitation with their 18-month-old son Matthew forms the backdrop for the acts for which defendant was convicted. For three months prior to the incident, Ron Hayes had been working in Alaska. Dawn Hayes wrote him a letter stating her intention to file for a divorce. Shortly thereafter, Ron Hayes returned to McMinnville, where Dawn and Matthew resided. Accompanied by three male friends, Ron drove to the apartment where Dawn and the baby were staying. While one of his friends remained in the car, Ron and the other two men gained admittance to the apartment. Ron went with Dawn to the back bedroom where the baby was sleeping. He struck Dawn one or more times, splitting her lip, and grabbed her throat. He then announced his intention to take Matthew with him. Ron picked the baby up and carried him to the front porch of the apartment, where two of his friends were waiting. Dawn stood inside the front door. Around this time, defendant arrived on the scene. He was previously unacquainted with Ron Hayes except by name. Defendant asked Dawn what was going on, whereupon Dawn told him that the man holding the baby was "Ron," and that he had just "knocked me around." She asked defendant "if there was something he could do to stop Ron." Defendant went inside the apartment. Ron, who still had the baby, got into the car along with the others and the four men started to drive slowly around the court. At

this point Dawn went out to the car and told Ron "that if he was going to take the baby to at least take some clothes" for him. After Ron "mouthed off," Dawn called the men "chicken." Ron and two others then started to get out of the car, when defendant reappeared, wielding a shotgun. Unbeknownst to the men, the gun was unloaded. He told the men to stop, and that nobody was taking the baby. Dawn took Matthew out of the car, and Ron and his friends left.

We address the second assignment of error first. Defendant contends that at trial he was trying to establish a defense under ORS 161.209, which provides:

> "* * * [A] person is justified in using physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force, and he may use a degree of force which he reasonably believes to be necessary for the purpose."

Defendant offered the testimony of Dawn Hayes' father, Robert Taylor. He stated that Robert Taylor would testify that Mr. Taylor was introduced to defendant by Dawn Hayes. The offer of proof further stated that because of Mr. Taylor's concern for his daughter's well-being and her general circumstances, he asked defendant to "Look out for my daughter" or "Take care of her." The trial court noted that Dawn Hayes had already testified to the same effect, and rejected the proffered testimony as cumulative. Rejection of evidence on this basis is within the discretion of the trial court. *State v. Hull*, 34 Or App 147, 578 P2d 434 (1978). We find no abuse of discretion.

Defendant next offered the testimony of Dawn Hayes. The offer of proof stated:

> "Well, Your Honor, we would expect that the witness would testify that she had advised Mr. Wheeler of the treatment that she had received from her husband in the past, that he was aware of that, that he was aware of the violent temper of Mr. Hayes. That she had told him other matter of his violence and violent nature in the past."

[878]

By this testimony, defendant was attempting to show that when Ron Hayes and two companions got out of the car in response to Dawn Hayes' insults, defendant, because of his knowledge of Ron Hayes' violent tendencies, could have reasonably believed that Ron, with or without the help of his friends, intended to physically harm Dawn Hayes. The trial court ruled:

> "All right, that—that's the very fuzzy area in this case. I don't understand why these men would get out of the car in response to some remark, you know, you chicken, or something like this. And that's even before Mr. Wheeler becomes involved in the incident.
>
> "No, I—I don't think this would be relevant testimony."

We disagree. First, the issue is not why the men got out of the car, but whether defendant reasonably believed that Dawn Hayes was in danger of the use or imminent use of unlawful physical force. Further, it was for the jury rather than the trial court to determine this question. We conclude that defendant's awareness of Ron Hayes' violent temper and previous violent treatment of Dawn Hayes was relevant to whether defendant could have reasonably believed that Ron Hayes was about to subject Dawn Hayes to "the use or imminent use of unlawful physical force." The trial court erred, therefore, in excluding the testimony of Dawn Hayes. Since we cannot say that the error "was very unlikely to have changed the result of the trial," *State v. Van Hooser*, 266 Or 19, 26, 511 P2d 359 (1973), the exclusion of the evidence was prejudicial. Therefore, we reverse and remand for new trial.

The record on appeal is inadequate to determine whether defendant's statements to police were inadmissible. There was no preliminary hearing of determination regarding voluntariness. The evidence at trial concerning these statements generally showed that the interview took place at defendant's apartment, that defendant was a suspect, that he at no time received *Miranda*[1] warnings, and that he was not

---

[1] *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

under arrest during or immediately after the interview. The police officer who helped conduct the interview also testified that there was a point in the interview when defendant asked to leave the residence and go to his automobile, and was denied permission to do so. Defendant argued that during the interview defendant "was in a custodial situation," and that the statements should, therefore, be excluded. The court ruled:

> "No, it hasn't been established when, if at all, that he was not free to leave. I don't think you have the custodial atmosphere that's necessary, thus requiring the Miranda Warnings. So I will overrule the objection."

Since the record is silent as to the point during which defendant was denied permission to leave, we cannot determine from the record whether defendant was in custody at the time of the statements. We point out that defendant does not have the burden to prove that the statements were made in a custodial environment. Rather, where statements by a defendant are challenged as involuntary, the prosecution has the burden to show the voluntariness of the statements. *Lego v. Twomey*, 404 US 477, 92 S Ct 619, 30 L Ed 2d 618 (1972). This burden extends to the issue whether the statements were made in a noncustodial environment. *See Oregon v. Mathiason*, 429 US 492, 497, 97 S Ct 711, 50 L Ed 2d 714, 720 (1977) (Marshall, J., dissenting).

We also observe that the proceedings summarized above were held in the presence of the jury. We assume that on remand a voluntariness hearing will be held *in camera*, as suggested in *State v. Brewton*, 238 Or 590, 603, 395 P2d 874 (1974), and *State v. Blackford*, 16 Or App 217, 517 P2d 1196 (1974), unless defendant waives such a hearing, *State v. Rohde*, 245 Or 593, 421 P2d 690 (1966), *cert denied,* 387 US 924, 87 S Ct 2043, 18 L Ed 2d 981 (1967), at which time the facts may be fully developed.

Reversed and remanded for new trial.