Argued October 5, 1967, affirmed May 1, 1968

STATE OF OREGON, *Respondent, v.*
LEROY WAYNE EARP,
*Appellant.*
440 P. 2d 214

*Garry P. McMurry,* Portland, argued the cause for appellant. On the briefs were McMurry & Packwood, Portland.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, C. J.

The defendant Leroy Wayne Earp was convicted of murder in the first degree and appeals.

The defendant primarily contends that the trial court committed error in permitting detective Thompson of the Portland Police Department to testify as to statements made by the defendant in a four hour trip from Pendleton, Oregon (where the defendant had been apprehended and arrested) to Portland, Oregon. Further, that the trial court committed error in permitting the police officers to testify regarding admissions made by the defendant while with the officers near the scene of the crime.

The undisputed facts insofar as they apply to the above questions are that the murder of which defendant was convicted was committed in Portland. The offense occurred sometime early on the morning of August 3, 1965. The defendant arrived home early that morning and his wife learned of the body in his car. He and his wife drove to defendant's sister's house where he asked for money and when asked why he wanted the money he stated he "had killed a girl last night" and "with these," indicating his hands.

He then took a cab to the bus station and purchased a ticket for Laramie, Wyoming. He left the bus at Pendleton and registered at a motel as "Lee Wharfield."

The defendant's step-father apprised himself of the body in defendant's automobile and called the police. A warrant for murder was then issued and defendant was arrested at his motel room in Pendleton at 8:20 p.m. by a Pendleton police officer. He was taken to the Umatilla County jail and booked. Defendant asked to make a telephone call and was permitted to do so.

At approximately 12:20 a.m. Wednesday, August 4th, 1965, two Portland detectives, Thompson and Thomine, arrived at the Pendleton jail for the purpose of transporting defendant to Portland.

Defendant was informed of the charge against him and of his constitutional rights, including a statement that he did not have to answer questions until such time as he had talked to an attorney. He informed the detectives that he wanted an attorney, but did not wish to call one at this time. His wife and sister had arrived in Pendleton and he was permitted to visit with them. After eating a sandwich and drinking coffee he left with the officers at about 2:00 a.m. Detective Thompson and defendant were seated in the back seat of the automobile and Sergeant Thomine drove. On the way to Portland the defendant described his activities on the night leading up to the death of the girl to detective Thompson and asked if his car had been towed in. The officer told him he didn't know, then recalled that it must have been towed in as he "had heard someone ask about the spare tire and wheel from the trunk." Detective Thompson then testified "At that he told me that he had thrown it out up in Washington Park and he couldn't tell anyone exactly where it was, but

that he could show someone, he thought, where it was thrown." "He stated numerous times *  *  * that he was sorry."

Detective Thompson testified that no threats or promises were made and they only talked "whenever he wanted to talk about it." He also testified the defendant seemed mentally alert. The defendant did not testify.

The above evidence was elicited before the judge, in the absence of the jury, and the trial court found beyond a reasonable doubt that the defendant's statements were voluntary and free from improper coercion. Subsequently the officer testified before the jury as to the conversations.

The officers and the defendant arrived in Portland about 6:00 a.m. the morning of August 4, 1965, and defendant was taken to a Portland police station. He there told a deputy district attorney that he did not wish to make a statement and that he wanted an attorney. At 9:00 a.m. the defendant was taken before a magistrate and again advised of all his constitutional rights.

After having been again advised of his rights, the defendant told the officers if they would take him to Washington Park he would show them where he had thrown the tire. The officers then took him to the park but the tire was not then discovered. Later it was discovered that the tire had rolled down an incline and was concealed by the undergrowth. On this trip the defendant again told the officers of what transpired on that night the crime was committed. At approximately 2:00 p.m. while the defendant was talking with his relatives an officer brought in a spare tire and asked him if this was his tire and he said it was.

. . Another hearing as to the voluntariness of these statements was heard by the judge in the absence of the jury, and the trial court again found beyond a reasonable doubt that the statements were voluntary. The defendant did not testify at this hearing.

The defendant on the 4th day of August executed an affidavit that he was an indigent and filed a request for counsel. On the 5th day of August the trial court appointed an attorney to represent him.

■ The defendant's contention as to statements made to the officers by him on the return from Pendleton to Portland and while looking for the tire is that, since the defendant stated at Pendleton at the time he was advised of his rights and again when taken before the magistrate in Portland, that he wanted an attorney, ipso facto any statements made by him thereafter are inadmissible.

The record discloses that there was no attempt on the part of the officers to question the defendant on the return trip from Pendleton, but that his statements were of his own desire. After his arrival in Portland, police officers questioned defendant only concerning the lost spare tire and "asked if he would show us where he had thrown the spare wheel and he agreed to."

The contention of the defendant was settled adversely to his position in *State v. Atherton,* 242 Or 621, 410 P2d 208.

The defendant relies upon *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L ed 2d 694, but it is to be remembered that this case was tried before the *Miranda* decision was rendered. *Miranda* is not applied retroactively. *Dorsciak v. Gladden* (1967), 246 Or 233, 425 P2d 177; *State v. Dills; Stice,* 244 Or 188,

416 P2d 651; *Johnson v. New Jersey,* 384 US 719, 86 S Ct 1772, 16 L ed 2d 882.

However, if *Miranda* applied, there was no violation of the import of that decision which is summarized by the Court as follows:

> "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda v. Arizona,* supra, 384 US 436, 473, 16 L ed 2d 694, 726.

The prior statement of the United States Supreme Court summarized above is found on pages 706 and 707, 16 L ed 2d, 384 US 444-445, where the court stated:

> "* * * [T]he prosecution may not use statements, whether exculpatory or inculpatory, stem-

ming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. *The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.* If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." (Emphasis ours.)

By the use of the word "process" it is clear the court is speaking of "custodial" interrogation, and that after a prisoner has been informed of his right to remain silent and of his right to consult with counsel prior to making any statements, he may waive these "procedural safeguards" and answer all questions if he does so "voluntarily, knowingly and intelligently." It

is also clear that if at any time during the interrogation he wishes to call back into effect the rights of which he has been informed he may do so and prevent further interrogation.

All of the evidence in this case is to the effect that this defendant was fully advised of these "procedural safeguards", and this is not denied by the defendant. Also, that, although he stated he desired an attorney, he did not express any desire to see an attorney prior to answering questions by the officers, nor did he ever request the right to "consult with an attorney before speaking."

As stated, the defendant does not contend that he was not informed of his rights. Defendant's only contention is that his statements could not be voluntary since the record discloses he had been without sleep for 48 hours and he had taken "dexamyl" pills.

There is nothing in the record of the hearings before the trial judge that indicated the defendant was totally without sleep for 48 hours or that he had taken an excessive amount of "dexamyl" pills.

■ The record more than justified the trial court's findings that defendant knowingly and voluntarily made the statements attributed to him by the police officers.

■ The defendant also contends that, since the indictment charged only that the defendant "did unlawfully, feloniously and purposely and of deliberate and premeditated malice kill * * *," and the State in the course of the trial introduced evidence of a killing in the course of committing a felony, as well as evidence from which the jury could draw a reasonable conclusion of premeditated malice, the defendant was deprived of an opportunity to know of and defend against the felony murder theory. He therefore urges

that we review and overrule *State v. Reyes,* 209 Or 595, 303 P2d 519, 304 P2d 446, 308 P2d 182, where, after reviewing the statutory law and the prior decisions of this court, we held that an indictment which charges only premeditated murder is sufficient to sustain a conviction of murder in the first degree where the proof discloses that the killing was done in the course of committing or attempting to commit a felony.

We have reviewed *Reyes* and are fully in accord with its pronouncements.

■ The defendant also assigns as error the trial court instructing on premeditation and malice and on murder occurring in the course of a rape and on a killing in the course of a robbery for the reason there was insufficient evidence to support such instructions.

Our review of the evidence convinces us that these assignments of error had they been properly raised in the trial court are entirely without merit.

The judgment is affirmed.

DENECKE, J., dissenting.

The majority opinion appears to be based upon three grounds: First, the admissions of the defendant were not obtained by interrogation; Second, the defendant did not ask to consult with an attorney or ask to see an attorney prior to answering questions; and Third, the defendant waived his right to consult with an attorney before answering questions by answering questions in response to the continued interrogation by the officers.

With regard to the first ground, it is a question of fact whether the admissions made in the auto enroute from Pendleton were made without interrogation. In Portland, according to the police officer's testimony, at least some of the inculpatory statements admitted

into evidence were obtained as a result of interrogation.

As to the second ground, I agree that the defendant did not say precisely, "I do not desire to answer any question until I have had the opportunity to confer with a lawyer." However, the defendant's requests for an attorney are at least as precise as the advice given him on his rights to an attorney.

The magistrate advised him: "I also told him that he was entitled to the services of an attorney, if he was unable to hire his own, that the State would appoint one to represent him."

Sgt. Thomine advised the defendant: "Yes, we had advised him of his rights, that he was entitled to an attorney and he had the right to remain silent, of course. And that if he didn't feel that he could afford an attorney, the Court would appoint him one and advised him of the charge  *   *   *."

An officer testified about the defendant's request for an attorney as follows: "Well, he was asked by a deputy DA, Ierulli, if he wanted to give a statement at that time in the detectives' office and he stated that he didn't, he wanted an attorney. He had told us the same thing."

In my opinion the most reasonable inference to be drawn from the testimony is that the defendant said he did not want to talk until he consulted with an attorney. If this is not a reasonable inference then it would likewise follow that it could not be inferred from the advice given by the officers to the defendant that he was advised that he had a right to consult with an attorney before answering questions. The advice being insufficient, the case would have to be reversed upon that ground.

As to the third ground, that the defendant waived

his right to consult with an attorney by finally answering questions asked in the continuing interrogation, a majority of this court so decided in *State v. Rosenburger,* 242 Or 376, 409 P2d 684 (1966), and *State v. Atherton,* 242 Or 621, 410 P2d 208 (1966). The majority believed that such decisions were permissible despite *Escobedo v. Illinois,* 378 US 478, 492, 84 S Ct 1758, 12 L ed2d 977 (1964), and *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965). *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L ed2d 694, 10 ALR3d 974 (1966), I respectfully submit, proved that *State v. Rosenburger,* supra (242 Or 376), and *State v. Atherton,* supra (242 Or 621), were incorrectly decided. *Miranda v. Arizona,* supra (384 US at 444-445), stated: "If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him."

I do not believe that the retroactivity of *Miranda v. Arizona,* supra (384 US 436), is an issue in this case. *State v. Allen,* 248 Or 376, 434 P2d 740, 745 (1967).

SLOAN and O'CONNELL, JJ., join in this dissent.