Argued and submitted May 16, reversed and remanded on appeal; affirmed on cross-appeal July 31, 2002

## STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

## JOSEPH R. VENTRIS,
*Respondent - Cross-Appellant.*

96-1155; A110810

50 P3d 1274

Janet A. Metcalf, Assistant Attorney General, argued the cause for appellant - cross-respondent. With her on the briefs

were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Kendra M. Matthews argued the cause for respondent - cross-appellant. With her on the briefs were Marc D. Blackman and Ransom Blackman LLP.

Before Haselton, Presiding Judge, and Wollheim and Brewer, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

This case is before us for the second time, following our reversal of defendant's two convictions for aggravated murder in *State v. Ventris*, 164 Or App 220, 991 P2d 54 (1999) (*Ventris I*). In *Ventris I*, we also affirmed defendant's related "convictions" for murder and robbery. *Id.* at 222. On remand, the state elected not to retry the aggravated murder charges. On resentencing, the trial court, over the state's objections, merged defendant's convictions for murder and robbery. The state now appeals, arguing that the court erred in merging the murder and robbery convictions and in failing to impose separate sentences for those crimes. As amplified below, we conclude that, given our disposition in *Ventris I*, the trial court's characterization of defendant's murder conviction as being one for felony murder, not intentional murder, was erroneous and exceeded the proper scope of our remand. Consequently, we reverse the trial court's merger of defendant's murder and robbery convictions and remand for further proceedings.

Defendant, for his part, cross-appeals, challenging the trial court's adherence, in convicting defendant of murder, to another aspect of our holding in *Ventris I*. We affirm on the cross-appeal without further discussion.[1]

Because it is central to our treatment of this appeal, we recount at some length the posture and disposition of *Ventris I*. This case arises from the murder of Vergil Crist in Scappoose during the early morning hours of August 10,

---

[1] The challenged ruling pertained to the admissibility of defendant's bloodstained clothes that were obtained from a friend's car. *Ventris I*, 166 Or App at 232-34. Defendant apparently believes that it is useful, or necessary, for purposes of potential federal habeas corpus review, to now reprise the arguments that we previously rejected, notwithstanding that defendant did not petition for review of that aspect of our holding in *Ventris I*. In all events, we adhere to our prior ruling and disposition.

Defendant also raises a battery of "cross-assignments of error," some of which are properly so denominated under ORAP 5.57(2) and others that are not. That is, some of those "cross-assignments" pertain, properly, to intermediate "ruling[s] of the trial court," ORAP 5.57(2)(b), and others refer to the trial court's ruminations about rulings that it might have made had it resolved the merger issue differently. As described below, 183 Or App at 113-15, we reject those matters that are properly designated as cross-assignments of error.

1996. Crist's apartment had been burglarized, and the autopsy showed that he had been beaten on the head and chest with a rod and stabbed 13 times. *Ventris I*, 164 Or App at 223. Crist died as a result of the stab wounds. *Id.* Circumstantial evidence suggested that defendant had been involved in the crime, and, ultimately, investigating officers recovered a pair of defendant's pants that bore traces of Crist's blood. *Id.* at 224-25. Thereafter, defendant confessed that he and two unnamed accomplices had entered Crist's apartment; that, when Crist surprised them, he had hit Crist in the head with the metal rod; that he had run away from the apartment, leaving his cohorts behind; and that, when he returned 20-30 minutes later, he did not see Crist but that his accomplices gave him a knife with some blood on it, which he discarded, and a wallet with cash. Defendant insisted that he did not stab Crist and was not present when Crist was stabbed. *Id.* at 226.

Defendant was charged with six counts of aggravated murder, on multiple theories, ORS 163.095, including two counts (Counts I and II) that he personally and intentionally committed the homicide in the course of committing or attempting to commit burglary in the first degree and robbery in the first degree. ORS 163.095(2)(d); ORS 163.115(1)(b).[2] The indictment also charged defendant with one count of murder, ORS 163.115, alleging that defendant:

"did unlawfully and intentionally cause the death of another human being, to-wit: Vergil Elmer Crist, by stabbing him with a knife or other sharp instrument, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon[.]"

---

[2] Count I of the indictment alleged:

"The said defendant on or about the 10th day of August, 1996, in the county of Columbia, State of Oregon, did unlawfully and intentionally commit the crime of Robbery in the First Degree and in the course of and in furtherance of said crime which the said defendant was committing, the said defendant personally and intentionally did cause the death of another human being, to-wit: Vergil Elmer Crist, a person who was not a participant in the crime, by stabbing him with a knife or other sharp instrument, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

Count II was identical, except that it alleged that the murder was committed in the course of committing the crime of burglary in the first degree.

Defendant was also charged with one count each of first-degree robbery, ORS 164.115, and first-degree burglary, ORS 164.225.

Before trial, defendant unsuccessfully sought to suppress his blood-stained pants and derivative evidence, arguing that the pants had been unlawfully seized without a warrant. *Ventris I,* 164 Or App at 226-27. In May 1997, the case was tried to the court. During the trial, the court excluded as irrelevant defendant's proffered evidence that a third person, Hernandez, had actually stabbed and killed Crist. *Id.* at 227.

The trial court found defendant guilty of aggravated murder as alleged in Counts I and II, murder, and first-degree robbery. The court explained its finding orally:

"I don't believe there were two friends with [defendant]. I believe that [defendant] was the sole intruder into Mr. Crist's apartment and I believe that [defendant] killed Mr. Crist.

"* * * * *

"In summary, I believe that [defendant] entered Mr. Crist's apartment for the purpose of committing theft which amounts to Burglary in the First Degree, when he encountered Mr. Crist he overcame Mr. Crist's resistance to that theft by killing Mr. Crist. The commission of a killing during the commission of both the burglary and then a robbery.

"I do not believe, based on the evidence, that [defendant] killed Mr. Crist either for the purpose of concealing his identity or to conceal the commission of burglary or robbery. Count One Aggravated Murder, Short version, a killing committed in the course of committing Robbery in the First Degree, guilty.

"Count Two, Aggravated Murder, killing committed in the course of committing Burglary in the First Degree, guilty.

"* * * * *

"Count Seven, Murder, guilty.

"Count Eight, Robbery in the First Degree, guilty."

The court subsequently entered a judgment of conviction, which provided, as pertinent:

> "Count 8 (Robbery In The First Degree) should merge, for purposes of conviction, into Count 1 (Aggravated Murder based on commission of Robbery In The First Degree). Count 7 (Murder) should merge, for purposed of conviction, into Count 2 (Aggravated Murder based on commission of Burglary In The First Degree). Further, that Counts 1 and 2 do not merge for purposes of conviction.

> "IT IS NOW, THEREFORE ORDERED that defendant be sentenced, on Count 1 (Aggravated Murder) and Count 2 (Aggravated Murder), to a term of imprisonment for life and defendant shall be confined for a minimum of thirty (30) years without possibility of parole, release or work release or any form of temporary leave or employment at a forestry or work camp. This sentence is pursuant to ORS 163.105(1)(c), ORS 163.150. Said sentences on Counts 1 and 2 to run concurrently."

Defendant appealed and raised two assignments of error: (1) "The trial court erred in denying defendant's motion to suppress evidence derived from the warrantless seizure of defendant's clothing"; and (2) "The trial court erred in excluding evidence proffered by defendant regarding Mr. Hernandez's role in the offense." Defendant's opening brief in *Ventris I* described the relief that he sought as follows: "On appeal, defendant seeks reversal of his convictions for Aggravated Murder and remand to the trial court for a new trial." In the argument section of that brief, defendant contended, with respect to the denial of suppression of the bloody pants (first assignment of error) that, if that assignment of error were successful, "defendant's conviction for two counts of Aggravated Murder must be vacated, and he should be granted a new trial." With respect to the exclusion of the "other perpetrator" evidence (second assignment of error), defendant asserted:

> "In this case, defendant was charged with both aggravated and 'regular' murder. The evidence he sought to present tended to show that John Hernandez had actually killed Mr. Crist. That evidence was improperly excluded by the trial court, because it tended to prove that defendant was not guilty of aggravated murder.

"* * * * *

"Once the trial court ruled that defendant's admissions to the police * * * were admissible, the only fact in issue on counts 1 and 2 was whether defendant or one of the 'two other guys' actually killed Mr. Crist. *This was the key factual distinction between whether defendant could be held responsible for aggravated murder rather than 'regular' murder.*'" (Emphasis added.)

We affirmed in part and reversed in part. We rejected the first assignment of error, pertaining to the bloody pants, but agreed with the second assignment of error—*viz.*, that the trial court had erred in excluding, as "irrelevant," defendant's "other perpetrator" evidence pertaining to Hernandez. At the outset of our opinion, in describing the parties' positions, we noted:

"Defendant's convictions for robbery in the first degree and murder were merged into the aggravated murder convictions for sentencing. *On appeal, defendant does not challenge either the robbery or murder convictions.*" 164 Or App at 222 n 2 (emphasis added).

Ultimately, we determined that the error in excluding the "other perpetrator" evidence was not harmless and concluded, "Accordingly, we reverse and remand for a new trial on Counts I and II alleging aggravated murder." *Id.* at 232. Our "tagline," which states the appellate disposition, read:

"*Convictions for murder and robbery in the first degree affirmed*; convictions for aggravated murder reversed and remanded for further proceedings." 164 Or App at 234 (emphasis added).

Neither party petitioned for reconsideration or sought Supreme Court review. In particular, defendant did not take issue either with our statement that he was "not challeng[ing] either the robbery or murder convictions," 164 Or App at 222 n 2, or with that aspect of our tagline that expressly affirmed his convictions for murder and robbery. At no point did defendant ever assert that the trial court's determination of guilt as to murder (as well as robbery) could not properly be denominated as a "conviction." Nor did defendant ever assert that, to the extent the court's determination of guilt on the murder charge explicitly and necessarily rested

on its determination that defendant had personally killed Crist, that "conviction" could not be affirmed given our disposition of the second assignment of error—that is, that by extension of the same reasoning that compelled reversal of the aggravated murder convictions, the "conviction" for murder must similarly be reversed.

■     On remand, the state ultimately elected not to retry the aggravated murder charges. By reversing the aggravated murder convictions and affirming the underlying murder and robbery convictions that had been merged into the aggravated murder convictions, our disposition in *Ventris I* effectively "unmerged" the inchoate murder and robbery convictions. Thus, the trial court was in a position to impose sentence on the convictions for robbery and murder in the first instance on remand. *See State v. Wilson*, 161 Or App 314, 317-19, 321-22, 985 P2d 840 (1999), *rev den* 330 Or 71 (2000) (discussing trial court's authority on remand, following reversal of aggravated murder convictions, to impose sentence on counts that "had been affirmed but for which no sentence had been imposed due to the earlier merger").

The state filed a sentencing memorandum on remand asserting, in pertinent part, that defendant could and should be given consecutive sentences on the murder and robbery convictions pursuant to ORS 137.123. The state pointed out that defendant's murder conviction was based on Count 7 in the indictment, which alleged that defendant "did unlawfully and intentionally cause the death of another human being, to-wit: Vergil Elmer Crist, by stabbing him with a knife or other sharp instrument[.]" The robbery conviction, on the other hand, was based on Count 8 in the indictment, which alleged in pertinent part that defendant caused serious physical injury to the victim "by stabbing him with a knife or other sharp instrument while in the course of committing theft of property[.]" The state noted that those crimes, as alleged, contained different elements. The state went on to argue about why consecutive sentences would be proper under ORS 137.123.

Relying on *former* ORS 161.062 and *State v. Crotsley*, 308 Or 272, 779 P2d 600 (1989),[3] defendant

---

[3] *Former* ORS 161.062 was repealed in 1999. Or Laws 1999, ch 136, § 1. It provided, in pertinent part, that, if the same conduct or criminal episode "violates two

responded that consecutive sentences could not be imposed because, as a matter of law, the convictions for murder and robbery were required to merge. Defendant argued that, although Count 7 of the indictment charged him with "intentional murder," the court necessarily convicted him of "felony murder" because all of the elements of felony murder were subsumed within the type of aggravated murder of which he was convicted.[4] Because the robbery was a lesser-included offense of the felony murder, defendant reasoned, the offenses must merge. Defendant further argued that the fact that the indictment charged intentional rather than felony murder was not controlling, noting that, under *State v. Earp*, 250 Or 19, 440 P2d 214, *cert den* 393 US 891 (1968), an indictment for intentional murder can support a conviction for felony murder if evidence supports it.

The sentencing judge—the same judge who had found defendant guilty in the earlier bench trial—agreed with defendant's argument, stating:

> *"I did find, and I still believe, that the homicide that you committed, Mr. Ventris, was felony murder.* It occurred in the course of this robbery. As a result, I believe, I firmly believe, that the Robbery in the First Degree conviction

---

or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations." Thus, a true lesser-included offense, which by definition contains no elements that are not contained in the greater offense, is not separately punishable under that statute. *See also* ORS 161.067 (containing virtually identical provisions).

[4] ORS 163.115(1) provides, in pertinent part:

"Except as provided in ORS 163.118 and ORS 163.125 [manslaughter], criminal homicide constitutes murder:

"(a) When it is committed intentionally, * * *; [or]

"(b) When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(G) Robbery in the first degree as defined in ORS 164.415."

We refer to murder under ORS 163.115(1)(a) as "intentional murder" and murder under ORS 163.115(1)(b) as "felony murder."

that I also found is clearly a lesser included offense of the murder conviction I also reached." (Emphasis added.)

The sentencing court thus concluded that, as a matter of law, the convictions for murder and first-degree robbery were required to be merged pursuant to *former* ORS 161.062.

On appeal, the state argues that the trial court incorrectly merged the murder and first-degree robbery convictions and, consequently, erred in failing to impose separate sentences for those crimes.[5] The state's argument can be reduced to the following propositions:

- In *Ventris I*, we affirmed the conviction for murder under ORS 163.115(1) for intentional murder, and the appellate judgment in that regard was final and not subject to revision or modification on remand.

- As a matter of law and historical fact, that conviction was, necessarily, for intentional murder and not felony murder. That is so not merely because of the "intentional" language of Count 7 of the indictment[6] and the judgment finding defendant guilty of Count 7. Rather, that fact is uncontrovertible because: (a) in finding defendant guilty following the May 1997 court trial, the trial judge explicitly stated his finding that defendant had killed Crist personally; and (b) the court contemporaneously entered convictions of aggravated murder, which, necessarily, required a determination that defendant had killed Crist "personally and intentionally." Thus, the appellate judgment in *Ventris I* necessarily affirmed a conviction for *intentional* murder.

- Given that uncontrovertible reality, the trial court could not "rewrite history" on remand by

---

[5] That issue is reviewable on appeal pursuant to ORS 138.060(1)(e) and ORS 138.222(4)(a). *See State v. Summerlin*, 139 Or App 579, 913 P2d 340 (1996).

[6] The state acknowledges that, under *Earp*, the fact that Count 7 of the indictment charged that the murder was "intentional" would not preclude entry of a conviction for felony murder on that count.

characterizing the murder conviction as one for felony murder and not intentional murder.

- Because robbery is not a lesser-included offense of intentional murder, the court erred in merging the robbery conviction into the murder conviction and in refusing, for that reason, to impose consecutive sentences on the separate convictions.

Defendant responds at three levels:

- Because of the original merger that preceded the appeal in *Ventris I*, defendant could not in that appeal have sought reversal of any "conviction" for "murder" because there was no such existing "conviction."[7] At most, there was an inchoate "conviction." Thus, defendant reasons, our affirmance of the murder "conviction" in *Ventris I* was "technically incorrect" and not entitled to any preclusive effect.

- To the extent our holding in *Ventris I* was binding as to the determination of guilt on murder, that affirmance could relate only to a determination of guilt of *nonintentional*—that is, felony—murder. That is so, defendant asserts, because the same reasoning that underlay the reversal of the aggravated murder convictions—*viz.*, that defendant was erroneously and prejudicially precluded from presenting evidence that someone else actually committed the murder—would apply equally to a conviction of intentional murder. Bluntly: Our reasoning in *Ventris I* was irreconcilable with any affirmance of an intentional murder conviction.

---

[7] As support for that proposition, defendant relies on *State v. Lyons*, 124 Or App 598, 612-13, 863 P2d 1303 (1993), *aff'd* 324 Or 256, 282 n 32, 924 P2d 802 (1996) (where defendant was convicted of both aggravated murder and murder, "merger of the murder count should have been for purposes of conviction, not just sentencing"; further noting that, in general, a count for an underlying felony that was a predicate to conviction for aggravated felony murder must be merged for purposes of both conviction and sentencing with the greater conviction for aggravated murder).

- The trial court's determination on remand that it had originally found defendant guilty of felony murder, not intentional murder, was supported by some evidence and, thus, must be affirmed.

Thus, the parties' arguments clash with respect to the true nature and content of the trial court's original May 1997 finding that defendant was guilty of murder, the effect of our appellate judgment in *Ventris I*, and the scope of the trial court's authority on remand in the wake of our "un-merging" of the murder and robbery counts. Before addressing those arguments, we highlight several salient features that frame and inform—and, frankly, complicate— our analysis:

*First*, defendant's present complaints about the "technical" deficiencies of our affirmance of his "convictions" for murder and robbery are the product of much-belated and selective hindsight. At no time in the briefing of *Ventris I* did defendant ever seek any relief other than the reversal of the two aggravated murder convictions, much less argue that reversal based on either assignment of error would, necessarily, obviate the court's determination of guilt of intentional murder. Given the vagaries of the law of merger, *that* failure *might* be regarded as the product of understandable oversight. However, there is no excuse for defendant's silence after we issued our opinion in *Ventris I*. As noted, defendant never sought reconsideration taking issue with our explicit statement that he "does not challenge either the robbery or murder convictions," 164 Or App at 222 n 2, or our disposition that unambiguously affirmed "the convictions for murder and robbery in the first degree." *Id.* at 234. Defendant never sought Supreme Court review of any aspect of *Ventris I*. Finally, after the appellate judgment became final, defendant never asked us to recall our appellate judgment to clarify our opinion and disposition. *See, e.g., Central Oregon Fabricators, Inc. v. Hudspeth*, 165 Or App 717, 720-21, 998 P2d 740 (2000).[8] If our disposition was, indeed, incorrect—

---

[8] *See generally Brewer v. Erwin*, 70 Or App 709, 711-12, 690 P2d 1122 (1984), *mod on other grounds* 75 Or App 132, 705 P2d 242, *rev den* 300 Or 162 (1985) (following issuance of appellant mandate, appellate court has inherent authority, in acting in aid of its own jurisdiction, to clarify its opinion to facilitate trial court action on remand).

"technically" or otherwise—defendant had myriad opportunities to seek correction or clarification. Instead, defendant remained silent—and only now argues the "incorrectness" of our original disposition by way of a partial defense of the trial court's action on remand.

*Second*, nevertheless, we must acknowledge that, at least in the abstract, defendant is correct that our characterization of the underlying findings of guilt of murder and robbery in *Ventris I* as "convictions" was imprecise and, perhaps, incorrect. *Compare Lyons*, 124 Or App at 612-13, *with Wilson*, 161 Or App at 317-19. We emphasize that our acknowledgment in that regard is purely abstract at this point. We consider below the concrete questions of whether or to what extent our affirmance of the murder and robbery "convictions" is, nevertheless, entitled to preclusive effect, given defendant's failure to question that disposition earlier.

*Third*, with due respect for the trial court, it altered history when it characterized its original finding of guilt as being one of felony murder, not intentional murder. Although, as acknowledged below, the court's effort in that regard may very well have been an understandable response to our reasoning in *Ventris I*, the record does not support such a reading. The record of the May 1997 court trial is explicit: The court expressly found that defendant, and not some third party, killed Crist. The court specifically found defendant guilty of murder based on Count 7 of the indictment, which pleaded "intentional" murder. Further, in convicting defendant of aggravated murder on Counts 1 and 2, the court necessarily found that the underlying murder was intentional. Thus, when the court found defendant guilty of murder following the court trial—the "conviction" that we affirmed in *Ventris I*—that finding was one of intentional murder, not felony murder. That was, and is, the reality.

*Fourth*, defendant is correct that, if our disposition in *Ventris I* is characterized—properly—as affirming a finding of guilt (or "conviction") of intentional murder, that disposition cannot be *logically* reconciled with our reasoning in *Ventris I*. That is so because the error that was the object of defendant's second assignment of error—the exclusion of the "other perpetrator" evidence—would equally infect both the

intentional murder conviction (which required that defendant have intentionally killed Crist) and the aggravated murder conviction (which required the same determination). By extension, reversal of the aggravated murder convictions on the ground that defendant was erroneously precluded from presenting evidence that someone else killed the victim would, equally, have supported reversal of the determination of guilt on the intentional murder count.

The state, for its part, candidly acknowledges that, in the abstract, there is a logical "tension," bordering on an innate conflict, between our reasoning in *Ventris I* and our disposition there. Nevertheless, the state asserts that that conflict is the product of defendant's failure in *Ventris I* to seek reversal of the finding of guilt on Count 7, to seek reconsideration or Supreme Court review after the issuance of our opinion and before the issuance of the appellate judgment, or to seek recall and clarification of the appellate judgment at any time thereafter. Given counsel's inaction in that regard, the state suggests that defendant's remedy, if any, lies in post-conviction relief.

Thus, the essential tension in this case: On one hand, everyone agrees that, in the abstract, our reasoning in *Ventris I* would preclude entry of a conviction for intentional murder on remand without a new trial. That is, the result the state urges cannot be squared with the logic of *Ventris I*. On the other hand, in *Ventris I*, we explicitly—and, without timely exception from defendant, finally—affirmed a "conviction" of murder that was, necessarily, predicated on a determination of intentional murder.

■ We cannot, and do not, pretend that the resolution of that conundrum is clear, or even satisfying. We further, and equally, acknowledge that the trial court, on remand, was faced with the same dilemma of attempting to harmonize our reasoning and our disposition. We emphasize that we imply no criticism of the trial court's efforts in that regard. Nevertheless, we conclude on balance that our *disposition* in *Ventris I* is controlling. Whether or not properly denominated as a "conviction," we explicitly affirmed the trial court's determination that defendant was guilty of murder—and that determination, in turn, was necessarily one that defendant

had committed intentional murder. Defendant never challenged that disposition. It became final. It is preclusive. Thus, the trial court erred in characterizing defendant's murder conviction as one for felony murder and, consequently, in merging defendant's murder and robbery convictions.

We freely acknowledge the tension with our reasoning in *Ventris I*. But this not a matter of mere mechanical elevation of form over substance. It is fundamental.

Just as the trial court could not alter history, neither can we. Just as the trial court actually, historically, found defendant guilty of intentional murder, we actually, historically, affirmed that determination. We cannot conveniently pretend otherwise. Nor can we ignore or bypass transcendent principles of preservation and finality. Defendant had ample opportunity to take issue with our disposition, but he did not. The appellate judgment became final; it is binding.

We thus, reverse the trial court's merger of defendant's murder and robbery convictions. The state is correct that the intentional murder and the robbery do not merge.

■         Accordingly, we proceed, briefly, to address defendant's cross-assignments of error. Defendant first argues that,

> "if the state prevails on its claim that defendant's conviction on remand was a conviction for intentional murder, defendant appeals from that conviction on the basis that the trial court erroneously excluded relevant evidence when reaching that decision, which entitles defendant to a new trial on that charge."

The evidence to which defendant refers is the Hernandez "other perpetrator" evidence that served as the basis for reversal of his aggravated murder convictions in *Ventris I*. It is doubtful that that contention is cognizable as a cross-assignment of error. *See* ORAP 5.57(2) (cross-assignment of error is appropriate where respondent does not seek to modify or reverse the judgment on appeal). It is, in essence, a variation on the argument presented on defendant's cross-appeal, *see* 183 Or App at 101 n 1. Even assuming, for the sake of argument, that the matter is cognizable, our discussion above should dictate our answer: Defendant's failure to

raise this issue in the course of the previous appeal forecloses him from raising it now. Defendant could have, but did not, argue in the first appeal that this evidentiary error required reversal of his intentional murder conviction. The law of the case doctrine precludes him from doing so now. *See generally State v. Pratt,* 316 Or 561, 569, 853 P2d 827, *cert den* 510 US 969 (1993).

Defendant next argues that the trial court erred in determining on remand that his initial waiver of a jury trial remained binding on a retrial of the aggravated murder counts. Any error in that regard obviously was mooted by the state's choice not to retry defendant for aggravated murder. There was not—and will not be—any retrial. Consideration of the trial court's ruling could have no practical effect.

Several of defendant's purported cross-assignments of error concern whether the trial court could, if it so chose, properly impose consecutive sentences on the murder and robbery convictions on remand, given the strictures of ORS 137.123, the terms of an alleged pretrial agreement between the parties, and the constitutional limitations enunciated in *State v. Turner,* 247 Or 301, 429 P2d 565 (1967). Although the trial court did make some observations concerning the perceived merits of the parties' legal arguments on those matters, we do not consider the court's remarks to constitute "intermediate *rulings* of the trial court" subject to cross-assignment of error pursuant to ORAP 5.57(2) (emphasis added). That is so because the trial court specifically did not make the *factual* determinations necessary to support consecutive sentences. In short, without any indication that the trial court would, in fact, have imposed consecutive sentences had it not reached the erroneous legal conclusion that the convictions merged, there is no "intermediate legal ruling" for us to reverse or modify.[9]

Defendant's remaining cross-assignments of error do not merit discussion.

_____

[9] The state, in its opening brief, suggested that the trial court's statements concerning consecutive sentences were "rulings" from which defendant must cross-assign error or cross-appeal, which certainly may explain why defendant has attempted to raise these issues prematurely. We emphasize that we are rejecting the state's procedural premise, and that defendant is *not* precluded from litigating those matters in the trial court on remand—or from raising them in a future appeal should the trial court impose consecutive sentences on remand.

On appeal, reversed and remanded with instructions to enter separate convictions for robbery and intentional murder and for resentencing; affirmed on cross-appeal.