Argued and submitted March 3, decision of Court of Appeals reversed, and
judgment of circuit court affirmed August 19, 2004

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOSEPH R. VENTRIS,
*Petitioner on Review.*

(CC 96-1155; CA A110810; SC S49981)

96 P3d 815

Marc D. Blackman and Kendra M. Matthews, of Ransom Blackman LLP, Portland, argued the cause and filed the brief for petitioner on review.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. Janet A. Metcalf filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, and Balmer, Justices.**

BALMER, J.

Gillette, J., dissented and filed an opinion which Carson, C. J., joined.

---

** De Muniz and Kistler, JJ., did not participate in the consideration or decision of this case.

**BALMER, J.**

In this criminal matter, we are asked to decide whether a finding under the aggravated murder statute, ORS 163.095(2)(d), that defendant personally and intentionally killed the victim requires us to conclude as a matter of law that a conviction for "murder" based on the same event necessarily is a conviction for intentional murder, ORS 163.115(1)(a), rather than for felony murder, ORS 163.115(1)(b). The question matters in this case, because defendant faces the possibility of a longer sentence if his conviction was for intentional murder.

Following a bench trial, the trial court convicted defendant of robbery, murder, and two counts of aggravated murder. By concluding that defendant had committed aggravated murder, the trial court implicitly found that defendant had committed the murder personally and intentionally in the course of a robbery. On appeal, the Court of Appeals reversed the aggravated murder convictions based on an evidentiary ruling, affirmed the convictions for murder and robbery, and remanded. *State v. Ventris*, 164 Or App 220, 991 P2d 54 (1999) (*Ventris I*). On remand, the state dropped the aggravated murder charges, and the trial court sentenced defendant solely for felony murder and robbery. The state appealed defendant's sentence, and the Court of Appeals again reversed, concluding that the trial court's previous finding of intentionality required, as a matter of law, that the murder conviction be treated as a conviction for intentional murder rather than felony murder. *State v. Ventris*, 183 Or App 99, 50 P3d 1274 (2002) (*Ventris II*). We allowed defendant's petition for review. We now conclude that, under the applicable murder statutes, a finding of intentional conduct as an element of an aggravated murder conviction does not require that a separate conviction for murder be treated as intentional murder and that, in this case, the trial court's findings and the evidence demonstrate a conviction for felony murder rather than intentional murder.

The Court of Appeals recounted the facts as follows:

"This case arises from the murder of Vergil Crist in Scappoose during the early morning hours of August 10,

1996. Crist's apartment had been burglarized, and the autopsy showed that he had been beaten on the head and chest with a rod and stabbed 13 times. Crist died as a result of the stab wounds. Circumstantial evidence suggested that defendant had been involved in the crime, and, ultimately, investigating officers recovered a pair of defendant's pants that bore traces of Crist's blood. Thereafter, defendant confessed that he and two unnamed accomplices had entered Crist's apartment; that, when Crist surprised them, he had hit Crist in the head with the metal rod; that he had run away from the apartment, leaving his cohorts behind; and that, when he returned 20-30 minutes later, he did not see Crist but that his accomplices gave him a knife with some blood on it, which he discarded, and a wallet with cash. Defendant insisted that he did not stab Crist and was not present when Crist was stabbed."

*Id.* at 101-02 (internal citations omitted).

The indictment charged defendant with six counts of aggravated murder, including two counts alleging that he personally and intentionally had committed homicide in the course of committing first-degree burglary and first-degree robbery. *See* ORS 163.095(2)(d) (defining one kind of aggravated murder). The indictment also charged defendant with one count of "murder" under ORS 163.115,[1] one count of first-degree robbery under ORS 164.415, and one count of first-degree burglary under ORS 164.225. The murder count in the indictment stated that defendant "unlawfully and intentionally cause[d] the death of another human being," thus suggesting that it alleged intentional murder under ORS 163.115(1)(a), rather than felony murder under ORS 163.115(1)(b). However, the indictment cited only ORS 163.115 and did not refer to a specific subsection or paragraph.

Pursuant to an agreement with the state, defendant waived a jury trial. After a bench trial, the trial court announced its findings of the facts of the crime. The court

---

[1] As we explain below, an indictment for "murder" under "ORS 163.115," without reference to the subsections and paragraphs of that statute, is ambiguous as to the particular type of murder the indictment charges. ORS 163.115 contains subparts defining intentional murder, ORS 163.115(1)(a), felony murder, ORS 163.115(1)(b), and murder by abuse, ORS 163.115(1)(c), each of which is a distinct theory of murder.

concluded that defendant had entered the victim's apartment to steal his belongings. At the time of the entry, defendant was intoxicated. Defendant encountered the victim in the apartment, the two struggled, and defendant stabbed the victim multiple times. Tests revealed that the blood on defendant's pants was the victim's. The trial court rejected defendant's claim that he had entered the apartment with any accomplices and that the accomplice or accomplices had killed the victim.

The trial court found defendant guilty of two counts of aggravated murder, one count of murder, and one count of first-degree robbery. The trial court explained its reasoning in oral findings:

> "It does not make sense to me that [defendant] would fail to name [accomplices] when his statement to Detective McBride simply amounts to a confession to a charge of Felony Murder. * * * I don't believe there were two friends with [defendant]. I believe that [defendant] was the sole intruder into Mr. Crist's apartment and I believe that [defendant] killed Mr. Crist.

> "* * * * *

> "In summary, I believe that [defendant] entered Mr. Crist's apartment for the purpose of committing theft which amounts to Burglary in the First Degree. When he encountered Mr. Crist he overcame Mr. Crist's resistance to that theft by killing Mr. Crist. The commission of a killing during the commission of both the burglary and then a robbery.

> "I do not believe, based on the evidence, that [defendant] killed Mr. Crist either for the purpose of concealing his identity or to conceal the commission of burglary or the robbery. Count One, Aggravated Murder. Short version, a killing committed in the course of committing Robbery in the First Degree, guilty.

> "Count Two, Aggravated Murder, killing committed in the course of committing Burglary in the First Degree, guilty.

> "* * * * *

> "Count Seven, Murder, guilty.

> "Count Eight, Robbery in the First Degree, guilty."

The resulting judgment of conviction merged the robbery count into the aggravated-murder count that was based on the first-degree robbery and merged the murder count into the aggravated-murder count that was based on the first-degree burglary. The trial court sentenced defendant to a term of imprisonment for a minimum of 30 years.

Defendant appealed, arguing that the trial court had erred in denying a motion to suppress certain evidence seized from defendant and also had erred in excluding evidence that would have pointed to another perpetrator's role in the murder and thus would have undermined the trial court's implicit finding that defendant committed the aggravated murder personally and intentionally. The Court of Appeals affirmed in part and reversed in part. Specifically, the Court of Appeals affirmed the trial court's decision to deny defendant's motion to suppress, but it reversed the convictions for aggravated murder, holding that the trial court had erred in excluding evidence that might have tended to suggest that another perpetrator was responsible for the murder. *Ventris I*, 164 Or App at 231-32, 234. The Court of Appeals noted that defendant did not challenge the convictions for robbery or murder, *id.* at 222 n 2, and reversed the convictions for aggravated murder, affirmed the convictions for murder and robbery, and remanded for further proceedings, *id.* at 234.

On remand, the state did not seek to retry defendant on the aggravated murder charges; instead, the state requested that the trial court sentence defendant on the murder and robbery convictions because the Court of Appeals had affirmed those convictions. The state and defendant, however, differed as to whether the resulting robbery and murder sentences would run concurrently or consecutively. The state argued that the court had convicted defendant of intentional murder, ORS 163.115(1)(a), and that the murder and robbery sentences should run consecutively. *See* ORS 137.123 (explaining circumstances under which trial court may impose sentences consecutively). In contrast, defendant argued that the trial court had convicted him of felony murder, ORS 163.115(1)(b), based on a lesser-included offense of robbery and that, as a result, the robbery conviction would merge into the felony murder conviction, and the trial court should sentence him solely on that conviction. *See former*

ORS 161.062(1) (1997), *repealed by* Or Laws 1999, ch 136, § 1 (setting out general rules of merger). *See also State v. Crotsley*, 308 Or 272, 278-80, 779 P2d 600 (1989) (describing how lesser-included offense merges into greater offense).

The judge who had presided over the bench trial also acted as the sentencing judge on remand. At sentencing, he remarked that his understanding of the nature of the murder conviction had been consistent. "I believe it was felony murder, * * * felony aggravated murder," according to the trial court:

> "I firmly believe, beyond a reasonable doubt, that this fact scenario started off its terrible life as a burglary, that precipitated into a robbery, that precipitated into a homicide. * * * I did find, and I still believe, that the homicide that you committed, Mr. Ventris, was felony murder. It occurred in the course of this robbery. As a result[,] I believe, I firmly believe, that the Robbery in the First Degree conviction that I also found is clearly a lesser included offense of the murder conviction I also reached."

The judgment and sentencing order entered after remand stated:

> "That at trial this Court found that defendant had engaged in conduct which consisted of entry into victim's home to commit theft, that is a burglary; that this burglary escalated into a robbery against the victim; that the robbery escalated into a homicide against the victim.

> "That the finding of these facts to be true requires that this Court treat the crime of Murder as plead in Count 7 as a felony Murder. That Robbery in the First Degree, as set forth in Count 8, is a lesser included offense of Murder, as set forth in Count 7.

> "That the Robbery in the First Degree conviction must, as a matter of law, merge into the Murder conviction. That because the Robbery in the First Degree conviction merges into the Murder conviction as a matter of law, this Court cannot consider sentencing those two counts consecutively."

Because the convictions for murder and first-degree robbery were merged under *former* ORS 161.062, the trial court sentenced defendant to a single term of 25 years' imprisonment

without the possibility of parole, with lifetime post-prison supervision.

The state appealed, arguing that the trial court had erred in merging the murder and first-degree robbery convictions. The murder conviction was for intentional murder, according to the state, because the trial court originally had made a finding, for the purposes of the aggravated murder conviction, that defendant had acted intentionally. As a result, in the state's view, the trial court should have imposed separate and consecutive sentences for the murder and robbery convictions, rather than merging them. Defendant, however, argued that the trial court properly had concluded that the murder conviction was for felony murder and, therefore, properly had merged it with the robbery conviction.

The Court of Appeals agreed with the state that, on remand, the trial court had "rewrit[ten] history" by characterizing the murder conviction as one for felony murder and not intentional murder. Based on its review of the 1997 trial record, the Court of Appeals concluded that the trial court's finding of intentionality required the trial court to treat the unspecified separate count for murder as intentional murder:

> "[W]ith due respect for the trial court, it altered history when it characterized its original finding of guilt as being one of felony murder, not intentional murder. Although, as acknowledged below, the court's effort in that regard may very well have been an understandable response to our reasoning in *Ventris I*, the record does not support such a reading. The record of the May 1997 court trial is explicit: The court expressly found that defendant, and not some third party, killed Crist. The court specifically found defendant guilty of murder based on Count 7 of the indictment, which pleaded 'intentional' murder. Further, in convicting defendant of aggravated murder on Counts 1 and 2, the court necessarily found that the underlying murder was intentional. Thus, when the court found defendant guilty of murder following the court trial—the 'conviction' that we affirmed in *Ventris I*—that finding was one of intentional murder, not felony murder. That was, and is, the reality."

*Ventris II*, 183 Or App at 111 (footnote omitted; emphasis in original).

Notwithstanding its conclusion that the murder conviction was a conviction for intentional murder rather than felony murder, the Court of Appeals acknowledged in *Ventris II* that the analysis in its prior opinion, *Ventris I*, was internally inconsistent. 183 Or App at 111-13. *Ventris I* had reversed the convictions for aggravated murder because of the trial court's failure to admit evidence that might have tended to show that defendant did not commit the murder personally and intentionally, and had affirmed the separate murder conviction without characterizing it as either intentional or felony murder. Later, *Ventris II* characterized that murder conviction as a conviction for intentional murder. Based on the reasoning in *Ventris II*, it is apparent that *Ventris I* affirmed a conviction for intentional murder that was based on a record from which competent evidence had been excluded—evidence, indeed, that the court in *Ventris I* stated "went to the very core of defendant's defense" that he did not personally commit the homicide. *Ventris I*, 164 Or App at 232. The Court of Appeals observed that it would not "pretend" that its resolution of the issue was "clear, or even satisfying." *Ventris II*, 183 Or App at 112. However, it placed the risk of any ambiguity in its decision in *Ventris I* on defendant, because defendant, in its view, could have clarified the nature of the convictions by seeking reconsideration from the Court of Appeals or review in this court. *Ventris II*, 183 Or App at 112-13. The Court of Appeals thus reversed the trial court's decision to merge the murder and robbery convictions. *Id.* at 113.

The thrust of the state's argument is that, when a defendant's indictment alleges that the defendant "intentionally cause[d]" the death of the victim and the trial court finds intentional conduct for purposes of aggravated murder under ORS 163.095(2)(d), the trial court must treat any murder count based on the same underlying conduct as intentional murder under ORS 163.115(1)(a), rather than felony murder under ORS 163.115(1)(b).[2] To evaluate that assertion, we must consider the statutory definitions of murder.

___

[2] It is true that, here, the indictment alleged that the murder was committed intentionally. However, the parties agree that the evidence, rather than the indictment, determines the nature of a murder conviction. *See, e.g., State v. Earp*, 250 Or 19, 26-27, 440 P2d 214, *cert den*, 393 US 891 (1968) (affirming first-degree murder

The statutory scheme describes murder as a form of criminal homicide that occurs when, "without justification or excuse, the person intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being." ORS 163.005(1). Criminal homicide encompasses murder, manslaughter, and criminally negligent homicide. ORS 163.005(2). The murder statutes distinguish between "ordinary" murder and murder that is accompanied by specified aggravating circumstances. *See* ORS 163.115 (murder); ORS 163.095 (aggravated murder). Ordinary murder has three subcategories: intentional murder, felony murder, and murder by abuse. ORS 163.115(1). This case does not involve murder by abuse. We now turn to the statutory definitions of murder that are relevant to this case.

*Intentional murder* is defined as murder committed intentionally: "[C]riminal homicide constitutes murder: When it is committed intentionally * * *." ORS 163.115(1)(a).

*Felony murder* is a form of murder that is committed during the course of certain enumerated crimes, including burglary and robbery:[3]

"[C]riminal homicide constitutes murder: * * * When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(C) Burglary in the first degree as defined in ORS 164.225;

---

conviction proved under theory of felony murder, despite indictment charging premeditated murder).

[3] Although the statute does not use the term "felony murder," this court has used the term as a shorthand reference for at least 47 years. *See, e.g., State v. Reyes*, 209 Or 595, 618-19, 308 P2d 182 (1957) (illustrating point). The concept of finding a defendant guilty of murder for a homicide committed in the course of another crime long has been a feature of Oregon criminal law. *See* General Laws of Oregon, Crim Code, ch LIII, § 502, p 527 (Deady 1845-64) ("If any person shall * * * in the commission or attempt to commit any rape, arson, robbery or burglary, kill another, such person shall be deemed guilty of murder in first degree.").

"\* \* \* \* \*

"(G)  Robbery in the first degree as defined in ORS 164.415."

ORS 163.115(1)(b).

*Aggravated murder* is defined as "murder as defined in ORS 163.115, which is committed under, or accompanied by" statutorily defined aggravating circumstances regarding the nature of the crime, the defendant, or the victim(s).[4] In other words, any of the forms of murder under ORS 163.115—intentional murder, felony murder, or murder by abuse—can become aggravated murder when the circumstances of the murder include one or more of the specified additional elements set out in ORS 163.095. One form of aggravated murder is a felony murder that is committed "personally and intentionally":

> " '[A]ggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:
>
> "\* \* \* \* \*
>
> "Notwithstanding ORS 163.115(1)(b) [*i.e.*, felony murder], the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b)."

ORS 163.095(2)(d).

Nothing in the foregoing statutes requires that, if a court finds that a defendant is guilty of aggravated murder because the defendant acted personally and intentionally under ORS 163.095(2)(d), such a finding also requires the court to treat a concurrent murder charge under ORS 163.115 as intentional murder. Rather, under the pertinent

---

[4] Aggravating circumstances that cause a murder to be "aggravated murder" include: murder-for-hire and soliciting murder-for-hire, ORS 163.095(1)(a), (b); repeat offender, ORS 163.095(1)(c); murder resulting in multiple victims, ORS 163.095(1)(d); murder occurring during maiming or torture, ORS 163.095(1)(e); intentional murder of a child under 14, ORS 163.095(a)(f). Other aggravating factors include: the identity of the victim, ORS 163.095(2)(a) (*e.g.*, law enforcement officer, judicial officer, or juror); the method of murder, ORS 163.095(2)(c) (*e.g.*, use of explosives); or the motive, ORS 163.095(2)(e) (*e.g.*, murder committed to conceal another crime or to conceal identity of perpetrator).

murder statutes, a judge or jury *could* find that a defendant had engaged in intentional conduct as part of an aggravated murder conviction under ORS 163.095(2)(d) and also find the defendant guilty of felony murder under ORS 163.115(1)(b), if those findings were supported by the evidence.

Defendant argues that the definition of the type of aggravated murder described in ORS 163.095(2)(d) logically and systematically builds upon the elements that provide the foundation for a conviction for felony murder under ORS 163.115(1)(b). As previously explained, ORS 163.095(2)(d) requires that the defendant personally and intentionally committed the homicide under the circumstances set out in ORS 163.115(1)(b), the felony murder statute. Although the statute does not use the term, defendant is correct when he informally characterizes aggravated murder under ORS 163.095(2)(d) as "aggravated felony murder," because it consists of felony murder with the additional aggravating circumstance of having been committed personally and intentionally. We agree with defendant that ORS 163.095(2)(d) and ORS 163.115(1)(b) fit together in a coherent relationship, with the additional finding of the aggravating circumstances transforming felony murder into aggravated murder. By contrast, the type of aggravated murder described in ORS 163.095(2)(d) does not have the same relationship with intentional murder. ORS 163.095(2)(d) specifically mentions and incorporates the definition of felony murder, but it makes no corresponding reference to the definition of intentional murder under ORS 163.115(1)(a), although it does refer to the element of intent.

Defendant's statutory argument, of course, does not mean that if a defendant is convicted of "aggravated felony murder," a concurrent "murder" conviction necessarily is a conviction for felony murder, rather than intentional murder. Indeed, one ordinarily would expect that a conviction for aggravated murder, which requires a finding that the defendant "personally and intentionally" committed the murder, would lead the judge or jury, in considering a separate non-aggravated murder charge, to find the defendant guilty of intentional murder, rather than felony murder. However, the statutes discussed above do not *require* that result; rather, they *permit* the jury or judge to convict the defendant of either felony murder or intentional murder.

■     With that statutory context in mind, we return to the issue in this case. We conclude that the Court of Appeals erred in asserting that the trial court's finding of intentional conduct under ORS 163.095(2)(d) and its verdict of "guilty" on the murder count in the indictment, which stated that defendant acted "intentionally," *necessarily* required the court to characterize the murder conviction as intentional murder under ORS 163.115(1)(a). Rather, the trial court findings that satisfied the elements of ORS 163.095(2)(d) could support a conviction for intentional murder under ORS 163.115(1)(a) *or* a conviction for felony murder under ORS 163.115(1)(b). In light of our understanding of the operation of the statutes, the murder conviction set out in the original judgment of the trial court is and remains ambiguous. That conviction could be for either intentional murder or felony murder, because the evidence adduced at trial satisfied the elements of both crimes.

We therefore turn to the trial court's findings and judgment to determine the nature of the murder conviction. We first consider several threshold issues regarding what materials we properly may review in making that determination and what standard of review we must apply. Defendant argues that we must accept the trial court's comments on remand after *Ventris I* that the trial court had intended to convict defendant of felony murder as findings of historical fact. Defendant argues that the Court of Appeals erred in holding that the trial court had no authority to revisit its findings and judgment. We do not reach defendant's argument regarding the effect of the trial court's hearing after remand, because, as we discuss below, we conclude from our review of the trial court's initial findings and the judgment and sentencing order of June 6, 1997, that defendant's conviction was for felony murder.

■■    As for the standard of review, we note that different standards apply to different determinations that the trial court made. In this, as in other cases, we review the factual findings that the trial court made following trial to determine whether the record supports those findings. A trial court finding supported by the record is binding on an appellate court. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Here, we content ourselves to rely on the findings that the trial court made following trial. Ordinarily, we review a trial court's

legal conclusions for errors of law. Here, however, the dispute between the parties centers not on the legal ruling that the trial court made after remand in merging defendant's murder and robbery convictions, but rather on the predicate for that ruling, namely, the trial court's characterization of defendant's murder conviction as being one for felony murder rather than for intentional murder.[5]

Turning to the trial court's findings and orders following trial, we find no reference to "intentional" murder. In the June 6, 1997, judgment and sentencing order, the trial court noted that it had found defendant guilty of "aggravated murder," "murder," and "robbery in the first degree." In merging certain of those convictions, the court stated: "Count 8 (Robbery in the First Degree) should merge, for purposes of conviction, into Count 1 (Aggravated Murder based on commission of Robbery in the First Degree). Count 7 (Murder) should merge, for purposes of conviction, into Count 2 (Aggravated Murder based on commission of Burglary in the First Degree)." Those references demonstrate that the trial court viewed the evidence as establishing that defendant killed the victim in the course of committing a felony.

To find defendant guilty of aggravated murder, of course, the trial court necessarily had to find that defendant "personally and intentionally" had killed the victim, but nothing in the text of the judgment and sentencing order suggests that the "murder" conviction was for intentional murder instead of felony murder. Rather, the court's findings support the conclusion that it found the defendant guilty of felony murder. The court noted that defendant's statement to one of the detectives who testified at trial "simply amounts to a confession to a charge of felony murder." The trial court further pointed out that the crime began as a burglary and escalated into a homicide—"[t]he commission of a killing during the commission of both the burglary and then a robbery." The words that the trial court used to describe the crime fit more closely with the characterization of the murder conviction as one for felony murder under ORS 163.115(1)(b) than for intentional murder under ORS 163.115(1)(a). Indeed, in its

---

[5] The Court of Appeals also viewed the issue that way. *Ventris II*, 183 Or App at 101.

brief to this court, the state agrees that "the trial court stead-fastly believed that it had convicted defendant of felony murder." We therefore conclude that defendant's conviction for murder was a conviction for felony murder. Moreover, we note that this court previously resolved a similar ambiguity over whether a "murder" conviction was for felony murder or intentional murder in favor of the defendant. *See State v. Fish*, 282 Or 53, 57, 577 P2d 500 (1978) (ambiguous jury verdict for "murder" resolved in favor of defendant). Accordingly, on remand after *Ventris I*, the trial court correctly sentenced defendant based on the crimes for which he was convicted.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**GILLETTE, J.,** dissenting.

This case presents a simple issue, which the majority states this way:

> "[W]e are asked to decide whether a finding under the aggravated murder statute, ORS 163.095(2)(d), that defendant personally and intentionally killed the victim requires us to conclude as a matter of law that a[n accompanying] conviction for 'murder' based on the same event necessarily is a conviction for intentional murder, ORS 163.115(1)(a), rather than for felony murder, ORS 163.115(1)(b)."

337 Or at 285. I accept that statement, with the additional note that the indictment in this case specifically alleged that defendant had committed the murder "intentionally." And, as so accepted, the answer is inescapable: Of course, the conviction was for "intentional" murder.

The majority, however, essentially asserts that, despite the fact that the trial court, by definition, originally must have found that defendant personally and intentionally killed the victim, and despite the further fact that the indictment in this case alleged in the accompanying murder count that defendant committed that murder "intentionally," defendant's conviction under that count was for felony murder only. But, absent an express declaration at the time by the trier of fact (here, the trial court) that the conviction on the murder count was, instead, for felony murder—and any trial court's explanation of the mental gymnastics underlying

such a verdict would have been interesting to read—I see no logical (or even permissible) way to read the judgment that was entered against defendant as being for anything other than intentional murder. The majority labors long and honorably to prove otherwise, but I am unpersuaded.

For the reason that I have expressed, I would affirm the decision of the Court of Appeals. I therefore respectfully dissent from the majority's contrary conclusion.

Carson, C. J., joins in this dissenting opinion.